NORCUM, Plaintiff in Error, *vs.* SHEAHAN, Defendant in Error.

1. Where a deed for the wife's estate in land, executed by husband and wife during the wife's minority, is avoided by a second deed executed after the wife's majority, a title acquired by the grantee in the first deed, by adverse possession, to other interests than those conveyed by that deed, does not enure to the benefit of the wife or her grantee in the second deed. (Norcum *v*. Gaty, 19 Mo. Rep. affirmed.)

2. A deed for the wife's land, executed by husband and wife during her minority, so far as it operates upon her estate, may be avoided by a second deed executed by husband and wife after her majority.

*Error to St. Louis Court of Common Pleas.*

This was an action of ejectment begun in 1848, for a lot in block 16 of the city of St. Louis. The defendant was in possession under a deed executed by Joseph Vasquez and wife in 1816, during the wife's minority. The plaintiff claimed under a deed executed by the same parties in 1846, after the wife had become of age. The lot was part of a lot confirmed to the heirs of Nicholas Hebert *dit* Lecompte, of whom Mrs. Vasquez was one, and was conveyed to her by a deed from a portion of the other heirs ; but it appeared that there were some of the heirs whose title she did not acquire. The facts are more fully stated in the report of the case of *Norcum* v. *Gaty*, 19 Mo. Rep. 65.

Mr. *Shepley* and Mr. *Picot*, for plaintiff in error.

In addition to the points made in the case of *Norcum* v. *Gaty*, 19 Mo. Rep. 65, Mr. Picot filed a printed argument upon the point that the conveyance by the husband of Mrs. Vasquez, in 1816, worked a discontinuance of her estate, and that she could not avoid it until the removal of her coverture. The line of argument pursued is indicated in the opinion of the court. The following authorities were cited : ( *Lewis* v. *Cook*, 13 Iredell, 195. 16 Pick. 165. Co. Litt. 67 *a*. 1 Saunders, 253, note 4. 1 Roper on Husb. & Wife, 3, 55, 56, 59, 63, 91. 1 Bacon's Abr. 695. 2 Kent's Comm. 133. 1 Preston on Abstracts, 335. 1 Hilliard on Real Prop. 120, §. 3. 1 Bacon's Abr. 724, 726. 3 Thomas' Coke, 93, note A, 113, 116, note U, 305, note L. Mr. Butler's note 278 to Co. Litt. 325 *a*. Littleton, section 594. Co. Litt. 326 *a*. 1 Roper, 59, 91. Co. Litt. 3 *a*, 357 *a*, 51 *a*. 4 Rep. 61. 2 Preston on Abstracts, 204, 210. 3 Id. 25. Wivel's case, Hobart, 45. 3 D. & E. 365. 3 Thomas' Coke, 92, note A. 1 Preston on Abstracts, 362, 368. 1 Mo. 553. 7 Mo. 337, 356. 4 Mo. 380.)

*W. L. Williams*, for defendant in error.

SCOTT, Judge, delivered the opinion of the court.

This case is in all respects like that of *Norcum* v. *Gaty*, 19 Mo. Rep. The facts are the same as well as the instructions. The instruction on which the judgment in that case was reversed is equally fatal to this.

The instruction was given at the instance of the plaintiff, and assumed that the possession of Mullanphy was adverse to any other claimant under Nicholas Hebert Lecompte, and that such possession was available as a bar to Marie Louise, the wife of Joseph Vasquez, against such claimant.

We do not see the principle on which this instruction can be sustained, as to that portion of the lot not conveyed by the deed of Marie Louise and her husband; as to this interest, Mullanphy was as any other adverse claimant. Because Mrs. Vasquez had a right to enter, after the death of her husband, on a part of the lot, how could such right affect other portions, which, it is admitted, Mullanphy held by an adverse title? What prevented such possession from being adverse to her as well as to the other heirs of Nicholas Hebert Lecompte? The deed of Vasquez and wife conveyed the life estate of Vasquez in his wife's land to Mullanphy in a portion of the lot. The wife's right taking effect in possession after the determination of that estate, could not be more extensive than that in which her husband had a life estate. On what ground can Mrs. Vasquez, or those claiming under her, derive any advantage to a portion of the lot not included in the deed, held adversely by Mullanphy? If, as to that part thus held, Mullanphy's possession was adverse as to any one, why not adverse as to Mrs. Vasquez and those claiming under her?

Another question has been raised by Mr. Picot, counsel for the plaintiff in error, and pressed upon us in an ingenious argument. The point is, that the alienation by Vasquez and wife to Hanley operated as a discontinuance of the wife's estate; that an estate in fee passed by their deed, and there being nothing on which the subsequent deed could operate, it was

a nullity and passed no interest ; that Mrs. Vasquez could only avoid the deed of herself and husband after his death, and a deed made before that time would be inoperative, as all her interest had previously passed, subject to be defeated after his death.

At common law, by the marriage, the husband was seized of a freehold estate in his wife's land, and this estate enabled him, by a feoffment with livery of seizin, to discontinue his wife's estate, or turn it into a mere right of action, which could only be maintained by her or her heirs after the death of her husband. (3 Coke, 93.) The statute of 32 Hen. 8, ch. 28, sec. 6, enacted that the alienation of the wife's freehold by the husband should not work a discontinuance, and gave her a right of entry, notwithstanding his alienation. There was no way at the common law by which a wife, on becoming a party with her husband to a mere feoffment, could convey her lands. Being covert, her deed was void. The statute of uses enabled the owner of lands to convey them, without the formality of a livery of seizin. Hence, the lease and release, the grant, the bargain and sale, modes of conveyance deriving their origin from that statute, are called rightful conveyances, because, conveying no other interest than the owner had, they worked no disseizin nor discontinuance of themselves, but only produced that effect by covenants contained in them. The common law mode of conveyance by feoffment with livery of seizin, with its incidental effect of defeating and destroying other estates limited on the same lands by disseizin, discontinuance, &c., has never been in use in this state. Declarations in opinions that a deed of bargain and sale was equivalent to a feoffment, mean nothing more than that such a conveyance is as effectual to pass the estate of the bargainor as the feoffment at common law. The idea was never entertained that a deed of bargain and sale had the potency of a feoffment with livery of seizin, in displacing, defeating or discontinuing any estates limited on the land conveyed. *Nemo dat quod non habet* was the principle applicable to that mode of alienation,

Norcum *v.* Sheahan.

unless by covenants it was made to have a more powerful effect against the grantor and those claiming in privity with him.

From what has been said, it is obvious that the husband's deed of bargain and sale can convey no greater interest in his wife's land than the law confers upon him. He is entitled by law to a freehold estate during his life or coverture, according to circumstances. If the wife is able to convey and join with him, adopting the ceremonies required by law, her estate passes irrevocably. If the prescribed ceremonies are not observed, her deed is void and her interest in her lands remains in her, and may be subsequently conveyed by a deed executed in conformity to law. Had the wife been an adult, her deed would have been effectual, and her estate would have passed. As it was, it did pass. The deed of Vasquez and wife conveyed a defeasible estate in fee ; and had it never been defeated, their vendee's title would have remained valid. So the real question in this case is, whether a married woman, being under age, and conveying her estate by joining in a deed with her husband, can, after she has attained her majority, but is still married, disaffirm that deed, by a conveyance to another of the same land, executed by herself and husband, the disaffirmance taking effect after the death of her husband.

Did this question depend on the common law for its solution, it would be answered in the negative. By the common law, lands in the adverse possession of another could not be conveyed, nor could a freehold estate be conveyed to commence *in futuro.* Neither of these principles obtain in our system of laws. Without an entry, at common law, livery of seizin could not be made, which was necessary to give effect to a feoffment. No right of entry would exist on lands which the husband had lawfully conveyed. His life estate continuing in the first vendee, there could be no right of entry on his estate. But, as under our system, lands in the adverse possession of another may lawfully be conveyed, and as estates of freehold may be made to commence *in futuro,* there is no objection founded in law to the subsequent conveyance of the husband

3—VOL. XXI.

and wife. Its operation is not at all affected by the previous conveyance made during the wife's infancy. It must be admitted that a husband and an adult wife, by observing the requirements of law, may as effectually dispose of the wife's lands as she herself could. If Vasquez and wife, upon his wife's attaining her majority, had reconveyed the land to Mullanphy, can any one doubt but that his title would have been confirmed? Now, if they could at that time affirm the deed, why may they not disaffirm it?

Those cases which hold that a bare conveyance, without entry, to another of lands previously conveyed, is not sufficient to disaffirm a previous conveyance made by an infant of his lands, have arisen in states where the principles of the common law regulating conveyances of lands held adversely still prevail, and are not applicable here, where they have been abolished. 1 American Lead. Cases, 114.

With the concurrence of the other judges, the judgment will be reversed, and the cause remanded.