———O———

LEAKEN D. BAKER, Respondent, *vs*. PRESS. G. KENNETT, Appellant.

1. *Infants—Conveyances to, etc.*—Conveyances to infants are not void, but merely voidable.
2. *Infant—Conveyance to—Acts of disaffirmance, what sufficient.*—An infant who had taken a deed of land, and given his note for the purchase money, made an attempt to disaffirm the contract before his majority, and again within a few days thereafter, and, upon the refusal of the vendor to agree thereto, offered to give him $2,000 together with the improvements erected by himself on the land, by way of compromise; and abandoned the premises and left them in a position for the vendor to occupy at any time he saw fit.
*Held*, that the disaffirmance was sufficiently speedy and unequivocal to avoid the contract.
3. *Infants—Contracts by—Ratification of, after majority—What sufficient and what not.*—To constitute a ratification of an infant's contract, a mere acknowledgment that the debt existed, or that the contract was made, is not sufficient. There need not be a precise and formal promise, but there must be a direct and express confirmation and a substantial promise to pay the debt or fulfill the contract. And the promise must be made with a knowledge of the facts, and with a deliberate purpose of assuming a liability from which the party knows that he is discharged.
4. *Infant—Note by—Disaffirmance of—Sureties, etc.*—Where an infant gives his note for land purchased, and at his majority disaffirms the contract, the sureties on his note will not be liable.

*Appeal from Jefferson Circuit Court.*

*John L. Thomas and Bro.*, for Appellant.

I.  A rash, improvident and hard bargain made by an infant with an adult, who has knowledge of his infancy, without an adequate consideration, is clearly and utterly void and will be so declared by a court of equity. (1 Sto. Eq., §§ 235, 236, 240, 242; Sto. on Cont., § 57; 25 Iowa, 95; 2 Atkins, 34.)

Those contracts of infants are void which the courts can declare to be to their prejudice.   This prejudice to the infant may appear either from the papers or from the transaction, viewed in the light of surrounding circumstances.   (Tyle Inf., 43, and cases cited; Chamb. Inf., 446; 1 Mass., 82; 2 H..Black, 515.)   And such a bargain cannot be ratified by the infant on his attaining majority. (1 Sto. Eq., § 241; Chamb Inf., 450; Tyler Inf., 42; 25 Iowa, 95; Shackelford vs. Smith 5 Dana, 232.)

The contract in this case was by the infant disaffirmed before his attaining his majority, and stood as if no such contract ever existed.   Hence it could not be affirmed afterwards. (Derocher vs. Con. Mills, 58 Me., 217; Vent vs. Osgood, 19 Pick., 572; Robinson vs. Weeks, 56 Me., 102.)

Before the ratification of a contract made by an infant can bind him, it must be re-affirmed by him, after his attaining his majority, with a full knowledge that he is not bound without a new promise.

*Thos. C. Fletcher, and Reynolds & Relfe*, for Appellant.

I.  The offer by the infant, before attaining his majority, to re-convey the premises for the purchase money, for which the note in suit was given, the renewal of that offer, accompanied by his abandonment of the premises a few days after attaining his majority, and the tender of a *bonus* of two thousand dollars to be let off from his bargain, are conclusive proofs of disaffirmance on his part, and worked a complete discharge at least as to time.   His acts after coming of full age are only explicable upon the supposition that he intended to abandon his contract.   (Sto. Cont., § 72; Tyler Inf., §§ 31, 41, Bingh. Inf. & Cov., § 65, note 1, and § 132; Chamb. Inf., § 435.)

II. Being discharged from the debt by the abandonment of the contract, no subsequent acknowledgment of that debt, however explicit, would give any right of action against him. (Dupuy vs. Swart, 3 Wend., 135; Bell vs. Morrison, 1 Pet., 371; Edgerton vs. Wolf, 6 Gray, 453; Heath vs. West, 28 N. H., 101; Vent vs. Osgood, 19 Pick., 572; Robinson vs. Weeks, 56 Me., 102; Derocher vs. Continental Mills, 58 Me., 217.)

III. The letters written by Cline, Jamison & Day, to Press. Kennett, were written with the intention of entrapping him into a recognition of the debt; and his answers to them were written under a mistake as to the ownership of the note, and as to the fact, that, without a new promise from him, he and his sureties were discharged. If one freely and deliberately, and upon full information, confirms the precedent contract, courts of equity will generally hold him bound thereby; but if he is still acting under the pressure of the original transaction; or if he is still under the influence of the delusive opinion that it is valid and binding upon him, then, and under such circumstances, courts of equity will hold him not barred from relief, by any such confirmation. The promise must be made voluntarily, freely, and with full knowledge that otherwise he would not be liable; that, without it, he was by law discharged. (Bing. Inf., § 69; Tyler Inf., § 80; Chamb. Inf., § 437; Sto. Eq., § 345; Parsons Cont., § 324; Chesterfield vs. Janssen, 2 Ves. Sr., 125; Crowe vs. Ballard, 2 Cox Ch. C., 253; Ford vs. Phillips, 1 Pick., 202; Harmer vs. Killing, 5 Esp., 102; Smith vs. Mayo, 9 Mass., 64; Curtin vs. Patton, 11 S. & R., 305; Hinely vs. Margaritz, 3 Pa. St., 428; Shackelford vs. Smith, 5 Dana, 232.) The only authority against this position that we are aware of, is that of Morse vs. Wheeler, 4 Allen, 570, cited by the Judge, who delivered the opinion in that case, in his own treatise on Contracts (see Metc. Cont., 59); so that we respectfully suggest, that the learned jurist and writer stands alone against the formidable array we have cited above. Hence we contend, that even if our secured proposition is not well taken, viz: that having

85

been discharged from the debt, no subsequent acknowledgment would revive it, yet it is clear that the promise contained in the letters to the attorneys for plaintiff does not bind the infant, as it was obtained by fraud and misrepresentation, and made in ignorance of the fact, that, without it, he was discharged.

IV. The legal proposition contained in Schouler Dom. Rel. 535, so strongly relied on by the plaintiff in the lower court, " that infancy does not protect the indorsers or sureties of an infant, or those who have jointly entered into his voidable undertakings ; that they, if of full age, may be made liable though the infant himself escapes responsibility," does not apply to this case. An examination of every case cited by Schouler will show, that they are cases where the sureties claimed a discharge by the mere fact of the infancy of the principal. In the case at bar, the sureties claim a discharge on the ground that the infant having disaffirmed the contract, there was a total failure of the entire consideration, and that on that ground they are released. Here is a case of subsequent failure of the consideration, which is equally fatal with an original want of consideration. (Bing. Inf., § 9, note d ; Sto. Bills, § 184 *et seq.*, and cases cited.)

*Cline, Jamison & Day, with Abner Green,* for Respondent.

I. Infancy does not protect the indorsers or sureties of an infant or those who have jointly entered into his voidable undertakings. They, if of full age, may be made liable though the infant escapes responsibility. (Schouler Dom. Rel., 535 ; Parker vs. Baker, Clarke Ch., [N. Y.,] 136 ; Hartness vs. Thompson, 5 Johns, 160 ; Frazier vs. Massey, 14 Ind., 382.)

II. The letter written to the attorneys of the plaintiff by Kennett after he became of age was as follows :

" February 1, 1873.

Cline, Jamison & Day, Attorneys at Law.

" *Gentlemen*—I received yours of previous date only day before yesterday, in which you want me to pay two thousand dollars on note held by you against me. Now, gentlemen,

there is no one more anxious to pay a note than myself ; but my total inability to do so at present is apparent to me, whether it may be to Mr. L. D. Baker or not. I have property which I am trying to sell, and as soon as I can I intend to settle my notes. If I can find a purchaser for the farm (which I gave Mr. Baker my note for) I can then pay him amount of note. Until then I have no money. I have property, but no money at present. If I ever sell my mining lands I will pay L. D. Baker, but can't possibly do so at this time.

Very Respt.,                    PRESS. G. KENNETT."

Kennett testified at the trial, that he had sold his mining lands; and the language of the letter shows, that he still held the farm as his own, and that he knew that plaintiff was still the owner of the note. And these facts make a complete ratification of the contract. (Bing. Inf. 69 and n.; Highley vs. Barron, 49 Mo., 103; Boyden vs. Boyden, 9 Metc., 519; Lawson vs. Lovejoy, 8 Maine, 405; Robbins vs. Eaton, 10 N. H., 562; Holmes vs. Blogg, 8 Taunt., 39; Hubbard vs. Cummings, 1 Maine, 11; Whitney vs. Dutch, 14 Mass., 460; Ferguson vs. Bell's Admr., 17 Mo., 347; Harris vs. Wall, 1 Exch., 128; Martin vs. Mayo, 10 Mass., 137; Bobo vs. Hansell, 2 Bailey, 114.)

III. A ratification by a person of his contract made during infancy is good, even though he is ignorant of the fact that he is not legally liable. (Metc. Cont. 59; Morse vs. Wheeler, 4 Allen, [Mass.,] 570.) And though Parsons on Contracts [vol. 1, page 323,] speaks of a contrary doctrine, it will be seen that he does not refer to the case of Morse vs. Wheeler, but cites two cases in that State, both of which had been expressly overruled by the case of Morse vs. Wheeler.

WAGNER, Judge, delivered the opinion of the court.

This was an action on a promissory note executed by the defendant on the 1st day of May, 1872, in favor of the plaintiff for the sum of eight thousand dollars.

The record discloses these facts: That at the time the note was made and executed, the plaintiff was the owner of a tract

of land in Jefferson county, and that the defendant, Press. G. Kennett, then a minor under the age of twenty-one, was desirous of purchasing the same. The parties finally came to an agreement, and the price was fixed at eight thousand dollars; plaintiff making to the defendant , Kennett, a deed for premises, and he executing the note sued on, due and payable seven months after date, with ten per cent. interest from the date thereof, with his mother and sister signing the note as his sureties. The evidence clearly shows, that the land was not worth the sum agreed to be paid for it. Kennett took possession of the same, making considerable improvements thereon, and on the 15th day of Sept. 1872, whilst he was still an infant, he went to the plaintiff and demanded back his note, offering to re-convey the land, and pay the interest due on the note. Shortly after his majority, he offered to pay two thousand dollars, and re-convey the property to plaintiff, and give him the improvements that he had put upon the premises, but this offer was refused. When Kennett made this last offer, plaintiff told him that Mr. Jamison had the note, and proposed that he should go to Jamison and pay the $2,000, and have it credited upon the note, but this proposition Kennett declined. Mr. Jamison is a lawyer, and a member of the firm of Cline, Jamison & Day, and there is a conflict of the testimony here between the plaintiff and defendant.

Kennett says, that at that time plaintiff told him that he had sold the note to Jamison, and that he was ignorant that Jamson was a lawyer, whilst the plaintiff swears that he told him that Jamison was his lawyer, and that he had placed the note in his hands for collection.

On Nov. 10th, 1872, Kennett attained his majority, and he abandoned the premises leaving a man there to take care of them, saying that there would be a lawsuit about them, and that the tenant should keep them for whoever became ultimately entitled to them.

Suit was brought on the note, March 11, 1873, and two letters were introduced on the trial, written by the defendant, Kennett, to Cline, Jamison & Day, dated respectively in Dec.

1872, and Feby. 1873, in which he recognizes the debt, and makes propositions in reference to its payment.

These letters, however, he alleges, were written whilst he was under the impression that the note had passed into the hands of an innocent purchaser before maturity, and after he had taken the advice of counsel who informed him that he could make no defense to the note.

At the trial a deed was exhibited and tendered to the plaintiff reconveying the premises to him, but its acceptance was refused.

After hearing the evidence, the court below gave judgment for the plaintiff, and the defendant has prosecuted an appeal to this court.

The old distinction between the void and voidable contracts of infants is becoming exploded by the courts, and the tendency of the modern decisions is in favor of the reasonableness and policy of a very liberal extension of the rule, that the acts and contracts of infants should be deemed voidable only, and subject to their election when they become of age, either to affirm or disavow them. (Townsend Adm'r. vs. Cox, 45 Mo., 401; 2 Kent's Com. [10th Ed.], 268, and cases cited.)

If an infant would disaffirm his contract, and recover back his property, either real or personal, he must refund what he has received. There can be no right of recovery as long as any part of the consideration is withheld. (Kerr vs. Bell, 44 Mo., 120; Highley vs. Barron, 49 Mo., 103.)

In cases of sales of land the general doctrine seems now to be, that the infant cannot conclusively avoid the conveyance till he arrives at age. (Schneider vs. Staihr, 20 Mo., 269; 1 Am. Lead. Cas. [5th Ed.], 317; Stafford vs. Roof, 9 Cow., 626; Bool vs. Mix, 17 Wend., 120.)

Leases and conveyances to infants form no exception to the prevailing rule—they are not void, but only voidable. (Griffith vs. Schwenderman, 27 Mo., 412; Irvine vs. Irvine, 9 Wall., 617.)

In the case of Irvine vs. Irvine, *supra*, the court lays down the rule, that it is not necessary to the affirmation of an in-

fant's voidable deed, that there be an affirmance by him after he comes of age, as solemn in character as the original act itself, still mere acquiesence without anything else is not generally sufficient evidence of affirmance. But any ratification or affirmance of a clear and unequivocal character, showing an intention to affirm deed, is, however, enough.

Something must be done by which it is plainly manifested, that the infant intends to confirm or ratify, as in the case of Ferguson vs. Bell (17 Mo., 347), where the infant executed a deed, and after coming of age expressed satisfaction with her bargain, received part of the purchase money, and spoke of her intention to make a confirmatory deed, but died suddenly without having done so. This was held a sufficient ratification.

In Clamorgan vs. Lane (9 Mo., 446), Louis Clamorgan, whilst an infant, had sold and deeded certain property to Dr. Lane. At the time when he arrived of age he went to the office of the attorney of Dr. Lane, who had sent for him with a view to procure a confirmation of his previous deed by the execution of another which had been prepared for that purpose. When asked to execute this deed of confirmation, Louis said he was perfectly willing; that the land was Dr. Lane's, and that he would execute a deed as soon as he was of age, but finally declined executing the deed which had been prepared, because of certain covenants contained therein, and the whole matter was deferred till a subsequent day by which time it was supposed an interview would be had with Dr. Lane, and another deed prepared conformably to Louis' views. Upon these facts the court decided, that the mere declarations, or promise, of Louis upon a contingency to make a deed of affirmance did not amount to affirming the deed.

In the opinion it is said: "So far from confirming the deed of August, it would seem that he expressly declined doing so at the time, and though he used some general expressions, that the land was Dr. Lane's, yet such expressions, taken in connection with his acts, cannot amount to a present

confirmation, but only indicate a disposition to confirm at some future time and on stipulated conditions. From the statements and acts of Dr. Lane's agent, Louis must have inferred, that a deed was necessary to a confirmation, and the execution of a deed he deliberately postponed."

Where the infant makes a conveyance of real estate, his mere failure for years to disaffirm affords no proof of a ratification. There must be some clear or positive act performed for that purpose.

The reason is plain enough. By his silent acquiesence he occasions no injury to other persons, and secures no benefits or new rights to himself. But where he has purchased or taken a lease to real estate, the case is different. There, if he wishes to rescind or disaffirm, he must do so in a reasonable time.

In speaking on this subject, the Supreme Court of Maine, in Boody vs. McKenney (23 Me., 517), says: " When during infancy he has purchased real estate, or taken a lease of it subject to the payment of rent, or has granted a lease of it upon payment of a rent, in such cases it is obvious, when he becomes of age, that he is under a necessity, or that common justice imposes it upon him as a duty, to make his election within a reasonable time. He cannot enjoy the estate after he becomes of age for years, and then disaffirm the purchase and refuse to pay for it, or claim the consideration paid, or thus enjoy the leased estate, and then avoid the payment of the stipulated rent, or receive rent on the lease granted and then disaffirm the lease. When he will receive a benefit by silent acquiesence, he must make his election within a reasonable time after he arrives at full age, or the benefits so received will be satisfactory proof of a ratification." (Ketsey's Case Cro. Jac., 320; Evelyn vs. Chichester, 3 Burr, 1765; Hubbard vs. Cummings, 1 Maine, 11; Dana vs. Coombs, 6 Maine, 89; Barnaby vs. Barnaby, 1 Pick., 221; Kline vs. Beebe, 6 Conn., 494.)

So in Robbins vs. Eaton (10 N. H., 561), it was held, that where an infant purchased land, and continued in possession

occupying and improving the same for some years after arriving of age, and had offered to sell the land, it amounted to a ratification of the original purchase.

And in Bigelow vs. Kinney (3 Vt., 353), where an infant, a short time before he became of age, purchased land, and executed his notes and a mortgage to secure the purchase money, and, two days afterwards, in consideration of the notes being given up to him, executed a quit-claim deed of the premises to the person of whom he had purchased, who went immediately in possession, and he and his grantees remained in possession several years before the infant intimated any intention to disaffirm the contract, it was held in an action of ejectment, brought by the infant after having arrived at full age against the person in possession, that he could not affirm the deed which conveyed the land to him and avoid the mortgage executed by him to secure the consideration money; and that, as the quit-claim deed was voidable only by the infant on his coming of age, he ought, if he meant to avoid it, to have given notice of disaffirmance, or otherwise have rejected the contract within a reasonable time after he became of age, and not having done so, he was presumed to have affirmed the quit-claim deed, and, therefore, was not entitled to recover.

Tested by these principles there can be no objection as to the reasonableness of the time in which the defendant disaffirmed the contract. He attempted to do so before he was of age, but in a few days thereafter he tried to rescind the contract, and, upon the refusal of the plaintiff, offered to give him two thousand dollars by way of compromise and also to include the improvements. But further, he did not remain on the place using it for his own purposes and benefit, but abandoned it and left it in a position for the plaintiff to occupy at any time he saw fit or proper to do so.

The disaffirmance was speedily made, and in the most positive and unequivocal manner. It is impossible then to hold the defendant bound by the contract, unless the letters written in December and February be construed to amount to a rati-

fication. The letters acknowledged the liability, and proposed paying the note in installments. The proposition was not accepted.

It is doubtful, according to the rule laid down in Clamorgan vs. Lane, whether the letters really did affirm and ratify the transaction. Whilst the defendant spoke of the note as an existing obligation, he appeared to be willing to pay under certain circumstances, but whether that was equivalent to a present confirmation may at least be considered questionable.

The rule, however, is well settled, that to constitute a ratification of an infant's contract, a mere acknowledgment that the debt existed, or that the contract was made, is not sufficient. There need not be a precise and formal promise; but there must be a direct and express confirmation, and a substantial promise to pay the debt or fulfill the contract. The promise must be made with a knowledge of the facts, with a deliberate purpose of assuming a liability from which he knows he is discharged by law. (1 Pars. Cont., 323; Highley vs. Barron, 49 Mo., 103.)

In the present case, the defendant swears, and there is nothing to contradict his testimony, that he wrote the letters from which the promise is sought to be deduced under a mistake of facts—under a misapprehension of his liability; that he supposed and believed that the note had been negotiated before maturity, and that he was advised that he could make no defense to it. If this was so, then most assuredly the promise contained in the letters constituted no affirmance or ratification.

He did not act with a deliberate knowledge of the facts. He was wrongly led to suppose that he was liable when in truth he was discharged. But it is contended, that although the infant may not be bound, the sureties are nevertheless liable.

As a general proposition it is undoubtedly correct, that infancy does not protect the indorsers or sureties of an infant, or those who have jointly entered into his voidable under-

takings. But the cases in which this principle has been decided are clearly distinguishable from the present one. Here, the undertaking of the sureties goes to the whole consideration.

Story says, " that a subsequent failure of consideration is equally fatal with an original want of consideration, and if a bill is given as an indemnity, it is a sufficient answer to it that the party has not been demnified at all, or that the original claim has been extinguished." (Story Bills, § 184.)

By the disaffirmance of the contract the plaintiff gets back his land, and the consideration which upheld the contract is extinguished.

It would be a strange doctrine which would give him back his land, and allow him to recover from the sureties the purchase money also.

The rule quoted does not apply to this case. The plaintiff contracted with an infant, knowing him to be an infant at the time, and after a rescission of the contract he obtains back again what he sold. This the law gives him, but it does not give him the property and the consideration both.

My opinion is that the judgment should be reversed. The other Judges concur, except Judge Napton, who did not sit.