————o————

MARY HUTH Appellant, *vs.* CARONDELET MARINE RAILWAY & DOCK COMPANY, Respondent.

1. *Land titles—Title bought by vendee to defeat vendor.*—It is the settled law of this State that a vendee may buy up a title antagonistic to that of his vendor, and set up the title so bought to defeat that of his vendor.

2. *Conveyances—Cotemporaneous declarations.*—The declarations of parties made at the time of executing a deed and showing the intention of the parties in making it, may be competent, where the testimony does not involve the construction of the instrument.

3. *Infant—Conveyance by—Acquiescence in after majority—How long necessary to work affirmance of deed.*—Where one who has made a conveyance during infancy, after becoming of age, does some act which is totally inconsistent with an intention to disaffirm, as receiving rent on a lease made in his infancy, after he becomes of age, an affirmance may be inferred from such act without regard to the lapse of time which has intervened after majority. But mere silence or inaction will not have the effect of a disaffirmance unless continued so long after attaining majority as to work a bar under the statute of limitations.

### *Appeal from St. Louis Circuit Court.*

*Bakewell & Farish*, for Appellant.

I. It was too late to disaffirm more than three years after majority. The disaffirmance must take place within a reasonable time. (Doe vs. Smith, 3 T. R., 436; 3 Bac. Abr., 145; 3 Burr., 1719; Richardson vs. Bright, 9 Ver., 368; Bigelow vs. Hening, 3 Ver., 353; Wallace vs. Lewis, 4 Harr. Mich., 75; Hastings vs. Dollarhide, 24 Cal., 245; Jenkins vs. Jenkins, 12 Iowa, 198; Blenkensop vs. Stout, 25 Ill., 132.)

II. The voidable contract of an infant will be ratified by tacit consent. (Law vs. Lovejoy, 8 Me., 405; Kline vs. Beebe, 6 Conn., 506; Robinson vs. Weeks, Am. Law Reg., 1869, p. 554; Scott vs. Buchanan, 11 Humph., 468; Kent's Com., 238, note; Sto. Cont., 572-4, Ed. 1847.)

*S. N. Holliday*, for Respondent.

*T. T. Gantt*, for Respondent, cited in argument: Peterson vs. Laik, 24 Mo., 541; Youse vs. Norcum, 12 Mo., 549.

NAPTON, Judge, delivered the opinion of the court.

This suit is to recover dower in a leasehold of 14.99-100 acres.

Charles Huth, the husband of plaintiff, died in 1850, having in possession and claiming title to a leasehold for 99 years from the inhabitants of Carondelet, granted to one Chartrand in 1843, and held by said Huth, through convey-

ances from Chartrand. This title was sold by Huth's administrator to the persons under whom defendant claims. The defendant, however, to defeat the claim of dower, set up a title adverse to Huth's, and insists that Huth had no title at his death, and that the deed from his administrator conveyed none,—and therefore that his widow had no dower. This adverse title is based on a deed from Chartrand to Withnell, made on the 15th day of May, 1851, and a deed from Burbayge to Withnell, dated June 19th, 1851, and Withnell's conveyance to the persons who obtained the Huth title from his administrator.

Burbayge, it seems, had a lease dated in 1840, prior to that granted to Chartrand—a lease however, containing the same conditions and reservations which the lease to Chartrand did. The rent reserved was the same, and the forfeiture of the lease depended on the failure to pay this rent within six months after it became due. This lease was conveyed by Burbayge on June 19, 1851.

It is admitted that Chartrand was under age when he made his deed to the persons who sold and conveyed to Huth; that he was only 18 years old, and that it was about three and one-half years after he became of age, that he executed the quit-claim deed to Withnell. Huth having died in 1850, in possession of the leasehold, his administrator, Fremon, advertised it for sale in accordance with orders from the Probate Court. Darby, Erskine and Carlin proposed to buy it. Whether they offered $2,500 for it on the day of the public sale, or not, is a disputed fact; but it seems that before the sale was consummated, an examination of the title was made by Darby, one of the three who proposed to buy, who was a lawyer, and objections were made to the title on two grounds; one, that Chartrand was under age when he made his deed to the grantor, Huth, and the other, that there was an outstanding lease to Burbayge. To obviate these objections and render the title proposed to be sold unobjectionable, it seems to have been agreed that these two titles should be bought up. It was therefore arranged between the administrator and Darby, Erskine and Carlin, that the administrator

should report these objections to the Probate Court, and ask for an order allowing him to sell privately; and it was also agreed that John Withnell, who was a neighbor, friend and creditor of Huth, would be the most suitable person to negotiate these purchases with Chartrand and Burbayge.

It appears that Withnell's intervention was successful; that he represented himself as acting in the interest of Huth's estate, and that for $600, which he advanced, he obtained the deed from Chartrand heretofore referred to. How the deed to Withnell from Burbayge was procured is not established, but it was procured for $100, paid by Withnell, according to the recitals in the deed. The purchase money of both these deeds, though advanced by Withnell, was ultimately paid by Darby, Erskine and Carlin, so that they paid $3,200, for the lease.

Upon the trial the court declared the law to be, first; that if, prior to the deed to Chartrand in October, 1843, there was a deed in 1840 to Isaac B. Burbayge, it was a bar to plaintiff; and second, that if Chartrand was born in 1836, and in the Spring of 1851, Erskine, Darby and Carlin employed John Withnell to purchase for them the title of Chartrand to block 66, of the Common of Carondelet, and furnished the said Withnell with the money to make the purchase, and Withnell as the agent of said Darby, Erskine and Carlin, purchased said title and took a deed to himself, dated May 15, 1851, and said Withnell afterwards in June, 1851, executed to Darby, Erskine and Carlin the deed of that date read in evidence, the plaintiff cannot recover.

The court found for defendant, and the judgment was in conformity to this view.

The first declaration of law by the court was that a lease dated three years before the one to Chartrand was a bar to plaintiff's recovery. The defendants held under Chartrand. These leases from Carondelet were made upon condition of payment of rent, and they were liable to forfeiture upon nonpayment of rent within a specified time. The mere execution of a lease dated in 1840, without any proof of its acceptance, or of any payment of rent during the ten years that

elapsed from its execution to the conveyance by Burbayge, was hardly sufficient to sustain this prior lease as a bar. The first instruction or declaration of law was therefore wrong.

The second declaration of law is based on the assumption that the administrator of Huth had no agency whatever in procuring the second deed from Chartrand, and that the intention of the grantor was of no importance ; and that the deed of May 15, 1851, was made to a stranger to the Huth title.

The question whether this last deed of Chartrand was made to a stranger to the Huth title, or whether it was made in confirmation of his prior deed, is a question of fact, not depending altogether on the construction of the deeds, which is a question of law, but upon facts outside of the deeds. The assumption that the second deed of Chartrand was made to a stranger is totally unwarranted, for there was certainly abundance of proof that Withnell, to whom the deed was made, acted as agent of Huth's estate and was a decided friend of Huth and a client of his administrator and a creditor of the estate who had an interest in the consummation of the sale. This question was totally ignored in the instruction ; and whether this second deed of Chartrand was intended as a ratification of his first deed, or not, is a matter of fact, not to be decided as a matter of law, because his second deed was to a different person.

The second instruction is based on the assumption that Chartrand's deed to Withnell, made in 1851, was to one who repudiated the title from Huth, and who claimed adversely to his estate. There is no doubt that a vendee may buy up a title antagonistic to that of his vendor, and set up the title so bought to defeat that of his vendor or of his vendor's representatives. This is agreed to be the settled law in this State. (Macklot vs. Dubreuil, 9 Mo., 477.)

But this position does not determine the merits of this case —since the main question in it is, whether the vendee purchased or procured an antagonistic title. That the title procured through the intervention of Withnell was not subsequent to the date of the one obtained from Huth's administra-

tor, sufficiently appears from the dates of the deeds. The administrator's sale was advertised in March, 1851. No sale was effected, but it was understood that Darby, Erskine and Carlin would give $2,500 for the land, and would give six or seven hundred dollars more if a clear title could be obtained. The ultimate sale and deed to Darby, Carlin and Erskine bears date on June 18, 1851. The deed of Chartrand to Withnell is dated in May, 1851, and Burbayge's deed to Withnell is dated June 19, 1851. The deed from Withnell to Darby, Erskine and Carlin is dated June 19, 1851, and it recites that the parties of the first part (Withnell and wife) "in consideration of the sum of seven hundred dollars to them in hand paid by the said parties of the second part, and *also in consideration that* the said parties of the second part have already paid to the estate of Charles Huth, deceased, the sum of twenty-five hundred dollars, for which sum they hold the receipt of the administrator of said estate, they grant, bargain and sell," &c.

This deed alone is certainly very strong proof, if not conclusive evidence, that Withnell's intervention was materially induced by a disposition to advance the interests of the estate. The dates of all these deeds show a co-operation between the purchasers and the administrator to perfect the title of Huth. But the second instruction or declaration of law given by the court ignores all participation of Fremon, Huth's administrator, in procuring these titles, and this would be a very material fact in determining whether the second deed made by Chartrand was in disaffirmance of his first conveyance, or in support of it, and Chartrand's declarations at the time of the deed to Withnell, and Withnell's declarations to Chartrand would also be legitimate proof to determine the intention of the two parties.

There is no doubt, that the construction of deeds is a question of law for the decision of a court—but the deed from Chartrand to Withnell required no construction. It was an ordinary quit-claim deed—but the purpose for which it was made, whether to one who was a stranger to Huth's title, or to one who was representing it and seeking to strengthen it,

is a question of fact, depending on proof of the intention of the parties to it.

Whether Chartrand had a right, under the circumstances, to disaffirm his sale made seven years before, is a question which has been discussed in this case, but is unnecessary to its determination. I do not find on an examination of the cases decided by this court, that this question in regard to the length of time allowed an infant to disaffirm his deed or contract, made in infancy, has ever been judicially determined. It was said by the learned judge who delivered the opinion of the court in Peterson vs. Laik (24 Mo., 544), that "the acquiescence of the infant after reaching his full age, for a period short of that which would secure a title by the statute of limitations does not destroy or take away the right which the law, for wise purposes, has conferred on infants of disaffirming their deeds." In that case, the disaffirmance occurred immediately after the parties arrived at full age, and therefore the remark was outside of the case. But as that learned judge rarely made observations which had not been duly considered, I think it must be taken in connection with what immediately follows, which was this : "Whether an infant may not, after attaining full age, within a shorter time, by his declarations, acts or conduct, restrain himself from a disaffirmance of his acts done during infancy, is a question not presented by anything contained in this record."

I infer from this, that in the opinion of Judge Scott, there might be conduct on the part of the infant after his arrival at full age, which, in the circumstances of the case, would preclude him from disaffirming within the period fixed by the statute of limitations.

In the case of Clamorgan vs. Lane (9 Mo., 472), all the acts of confirmation or disaffirmance occurred within a few days after the arrival of the grantor at full age. The point of a considerable lapse of time occurring did not arise and was not considered.

In the case of Youse vs. Norcum (12 Mo., 550,) the question of time was a leading one—but the grantor was not only an infant, but a married woman at the time of the first deed,

and the fact of coverture during all the time intervening between the first and second deed, was the prominent one on which the decision was based.

In Ferguson vs. Bell's Adm'r (17 Mo., 348) the court held, that any act of the infant grantor, showing an acquiescence after becoming of age, would be sufficient, such as receiving part of the consideration money and expressions of satisfaction with the contract.

The subsequent cases of Leitensdorfer vs. Hampstead (18 Mo., 270), Norcum vs. Gaty (19 Mo., 65), Norcum vs. Shehan (21 Mo., 25), Kerr vs. Bell (44 Mo., 125), Highley vs. Barron (49 Mo., 103), and Baker vs. Kennett (54 Mo., 82), do not turn upon this question of mere lapse of time.

There is no doubt, that a conveyance by an infant passes the title, subject to a right on the part of the infant when reaching full age, to disaffirm this contract and convey to some third person. What length of time will be allowed the infant after attaining majority, to disaffirm, is a question which has never been passed upon by this court, so far as my examination has extended. There are loose *dicta* in text books, and perhaps a decision or more of respectable courts, that this disaffirmance must be made in a reasonable time, and that mere acquiescence beyond this reasonable period is equal to an affirmance. That is a very indefinite expression, and amounts to very little more, than that the acquiescence of the adult, laboring under no disabilities, must be attended with such acts as to amount to a virtual recognition of the validity of his deed.

I incline to think, that Judge Scott's observation in Peterson vs. Laik laid down the only practicable rule on the subject. That was, that, in general, the statute of limitations would be the guide—but that in cases where an infant does something totally inconsistent with an intention to disaffirm, as in receiving rent on a lease made in his infancy, after he becomes of age, an affirmance may be inferred.

I do not find any authority for the doctrine, that mere silence or inaction, unless continued so long as to effect a bar

under the statute of limitations, will prevent the infant from disaffirming.

In Jackson vs. Carpenter (11 Johns., 541) Judge Yeates makes an observation very much to the same effect as that of Judge Scott in Peterson vs. Laik. "I am inclined to think (he says) that the deed given by the infant may be avoided in various ways, at any time, unless barred by the statute of limitations."

The fact, that an acquiescence for years operates as a fraud upon the grantee, is no objection in law to such exercise of his right. The rule is made to protect the infant, and all disaffirmances necessarily, or at least generally, operate to some extent very prejudicially to the interests of the grantee, and may, so far, be regarded as a fraud upon his rights.

In the case above cited—Jackson vs. Carpenter—the court says: "No *act* of the infant appears since he arrived at full age, by which his assent could be inferred, except mere omission. He has possessed no property, nor has he received rent. The confirmation of this sale consequently can in no point of view turn out to his advantage, nor can his neglect to do anything from 1784 to 1796 destroy the title. It would be contrary to the benign principles of the law by which the imbecility and indiscretion of infants are protected from injury to their property, that a mere acquiescence without any intermediate or continued benefit, showing his assent, should operate as an extinguishment of his title."

The doctrine of this court, in Lane vs. Clamorgan and Peterson vs. Laik, that mere acquiescence will not operate as a confirmation, seems to be well supported by reason and authority. But on the view we take of the deed to Withnell, the question is not material.

The judgment is reversed and the cause remanded. The other judges concur.