## CALKINS *vs.* FALK.

What is an insufficient memorandum in writing of a contract for the sale of goods for the price of fifty dollars or more, within the statute of frauds.

The law sometimes supplies by its implications, the want of express agreements between parties, but never overcomes by implications the express provisions of parties. If they are illegal, the law avoids them.

So if the meaning of the instrument is uncertain, the intention may be ascertained by extrinsic testimony; but it must be a meaning which may be distinctly derived from a fair and rational interpretation of the words actually used. If it be incompatible with such interpretation, the instrument will be void for uncertainty and incurable inaccuracy.

APPEAL from judgment entered in a decision made at the circuit. The action was brought to recover damages for the breach of an alleged executory agreement to sell to the plaintiff's assignor, James E. Sutphen, a quantity of hops, and was tried at the Schoharie circuit in November 1861, without a jury. The defendant, by his answer, denied the

making of the agreement, and also set up as a defense, that the contract if made, was void by the statute of frauds. The evidence of the contract consisted in certain written instruments. The writing signed by the defendant was in the words following, viz:

*"Seward, Aug.* 31*st,* 1860.

I have this day sold my entire crop of hops of this year's growth, of about four acres hops, to be well picked and cured and baled. Delivery to be at Palatine Bridge, upon about ten days' notice. Said hops to be a good merchantable hop, ·for which I agree to pay to said Abram Falk the sum of 18 cents per pound, on delivery. Said delivery to be on or before the first day of November next.      ABRAM FALK."

The plaintiff also produced a writing signed by his assignor in the following words, viz:

*"Seward, Aug.* 31*st,* 1860.

I have this day sold my entire crop of hops of this year's growth, of about four acres hops, to be well picked and cured and baled. Delivery to be at Palatine Bridge, upon about ten days' notice. Said hops to be a good, merchantable hop, for which I agree to pay to said Abram Falleck the sum of 18 cents per pound, on delivery ; delivery on or before the first day of Nov. next.      JAMES E. SUTPHEN."

The plaintiff was sworn on his own behalf and testified to the death of Sutphen his assignor ; proved the assignment ; that the contract had been presented to the defendant and notice given of the assignment, and then that he was notified to deliver the hops on the first of November as the contract provided, and he said he would if one Borst had nothing to do with it. It was also proved that hops were not delivered, but were sold by the plaintiff to other parties, and what the difference was between the price named and the market price where they were to be delivered. A nonsuit was moved for on the grounds that the evidence failed to establish a cause of action ; that the contract was void by the statute of

frauds; and also that it was void for want of mutuality. The nonsuit was refused, and the counsel for the defendant excepted to the refusal to grant the motion. The justice rendered a judgment in favor of the plaintiff for $809.64 damages, from which judgment the defendant appealed.

*L. Tremain,* for the appellant and defendant.

*D. C. Bates,* for the respondent and plaintiff.

*By the Court,* MILLER, J. It is claimed by the defendant's counsel that the contract introduced in evidence was void by the statute of frauds. That statute provides that every contract for the sale of any goods, chattels or things in action for the price of fifty dollars or more shall be void unless a memorandum of such contract be made in writing and be subscribed by the parties to be charged thereby. (2 *R. S.* 135, § 3.) The signing of the memorandum by the vendor is a sufficient compliance with the statute. (*Worrall* v. *Munn,* 1 *Seld.* 229. *Russell* v. *Nicoll,* 3 *Wend.* 112. *Davis* v. *Shields,* 26 *id.* 341.) The terms of the contract and the names of the contracting parties, however, must appear in the instrument. (*Clason* v. *Bailey,* 14 *John.* 486, 487. *Champion* v. *Plumer,* 4 *Bos. & Pull.* 253.) The memorandum must state the contract with reasonable certainty, so that it be understood without recourse to parol. (*Bailey* v. *Ogden,* 3 *John.* 417. 3 *Atk.* 503. 1 *Vesey, Jun.* 303.) With these general principles established, the inquiry arises whether a legal and valid contract was made out, on the trial, by the plaintiff.

1. I think the memorandum signed by the defendant was entirely defective, and insufficient for any such purpose. It did not contain the name of the person to whom it is claimed the hops were sold. It contained only a promise by the vendor to pay himself for the hops. The instrument was doubtful and uncertain in its phraseology, being an agreement

Calkins *v.* Falk.

of a vendor for the sale of property to himself and to pay himself for the property thus sold, on delivery.

2. If both instruments are construed together as several written instruments executed at the same time, between the same parties, relating to the same subject matter and forming parts of a single contract, the difficulty is by no means obviated. In that case, there is in addition to the agreement of the defendant, an instrument signed by the plaintiff's assignor in very nearly the same language as the one executed by the defendant, to the effect that Sutphen had sold his hops and agreed to pay one Abram Falleck, (not the defendant nor any person previously named in either of the writings) for them on delivery. There was no statement that the hops had been purchased by any one, or any thing to show a contract for the hops between two parties. When read together as a single contract they establish that each of the parties had sold his hops; that one of them, the defendant Falk, was to pay himself, for them, on delivery; and the other one, Sutphen, the alleged purchaser, was to pay one Falleck for hops he Sutphen had sold. The two instruments in connection with each other are utterly inexplicable and unintelligible. They show no valid agreement; no actual sale; no such contract as can be comprehended or effectually carried out and enforced. It is impossible to understand from them that one party had sold and the other had purchased, or that there was any promise by the purchaser to pay the seller. It is also to be remarked that neither one of the instruments refers to the other. It is quite obvious that they utterly fail to establish any legal contract; and whether read separately or together they are equally incongruous, indefinite and absurd.

3. It is said that the situation of the parties and the subject matter of the transaction may be taken into consideration, in the construction of any particular sentence or provision of a written contract; and under this rule the defendant is liable. It is not the meaning of a portion, but of the entire contract, which is to be construed in the case as bar. Even

if it was a sentence or provision of the agreement, I do not understand that the instrument can be contradicted or interpreted contrary to its language by the application of the rule referred to.   Extrinsic circumstances cannot be employed in any such case to impair and render ineffective the express terms of a written contract.   (1 *Green. Ev.* §§ 286, 287, 288.)   The law sometimes supplies by its implications the want of express agreements between the parties, but never overcomes by implications the express provisions of parties. If they are illegal the law avoids them.   (2 *Pars. on Con.* 27.   *Co. Litt.* 210 *a.*)   So if the meaning of the instrument is uncertain, the intention may be ascertained by extrinsic testimony, but it must be a meaning which may be distinctly derived from a fair and rational interpretation of the *words actually used.*   If it be incompatible with such interpretation the instrument will be void *for uncertainty and incurable inaccuracy.*   (2 *Pars. on Cont.* 77, 78.)   Under these well settled principles I do not see that a valid contract can be established.

Upon the whole case I think the contract was void by the statute of frauds, and the judge erred in denying the motion for a nonsuit.   For this error a new trial should be granted, with costs to abide the event.

[Albany General Term, December 1, 1862.  *Hogeboom, Peckham* and *Miller*, Justices.]