JOSEPH WHEELER, Respondent, *v.* AMERICAN CENTRAL INSURANCE COMPANY, Appellant.

### November 19, 1878.

1. A stipulation in an insurance policy against "keeping or using camphene, spirit-gas, burning-fluid, or chemical oils," is not violated by the use of a fluid for illuminating purposes not in its nature like camphene or spirit-gas.

2. The burden is on the insurer to show that the fluid used was of the nature or kind the use of which was prohibited in the policy.

3. A provision against the storing or keeping certain fluids and oils is not violated by keeping a fluid not expressly prohibited by the policy, in moderate quantities, for illuminating purposes; nor is this "so using the premises as to increase the risk," within the meaning of the policy.

4. The case being tried both on the pleadings and evidence, on the theory that there was a violation of one special clause in a policy, it is too late to contend in the appellate court that there was a violation of other clauses not relied upon at the trial.

APPEAL from St. Louis Circuit Court.

*Affirmed.*

GEORGE A. MADILL, with whom is THOMAS E. RALSTON, for appellant : The provision in the policy against "keeping or using" the fluids and oils mentioned therein was violated by the insured keeping for use the burning-fluid used for lighting purposes. — *Webb* v. *Insurance Co.*, 14 Mo. 3 ; *Williams* v. *Insurance Co.*, 57 N. Y. 274 ; *Mead* v. *Insurance Co.*, 7 N. Y. 530 ; *Pindar* v. *Insurance Co.*, 38 N. Y. 364 ;

*Lee* v. *Insurance Co.*, 3 Gray, 592; *Appleby* v. *Insurance Co.*, 54 N. Y. 253; *Macomber* v. *Insurance Co.*, 7 Gray, 257; *Whitworth* v. *Insurance Co.*, 2 Allen, 581; *Deivers* v. *Insurance Co.*, 35 N. J. 366; *Richards* v. *Insurance Co.*, 30 Me. 274; 80 Pa. St. 417.

NATHANIEL MYERS, for respondent: The prohibition against keeping "camphene," etc., contained in the first branch of the clause of the policy set forth in the answer, does not apply to keeping for the necessary illuminating purposes of the assured, but simply to a keeping for sale. — *Buchanan* v. *Insurance Co.*, 61 N. Y. 26; *Williams* v. *Insurance Co.*, 54 N. Y. 569; *Mutual Fire Ins. Co.* v. *Coutsville Shoe Factory*, 80 Pa. St. 407. The prohibition against "keeping or *using* camphene, spirit-gas, or any chemical oils or burning-fluids," applies only to such explosive burning-fluids and chemical oils as in their nature are like camphene and spirit-gas, those specially named. The doctrine of *ejusdem generis* clearly applies. — *Grumley* v. *Webb*, 44 Mo. 444; *City of St. Louis* v. *Laughlin*, 49 Mo. 559; *Wood* v. *North-Western Ins. Co.*, 46 N. Y. 426; *Morse* v. *Buffalo Ins. Co.*, 30 Wis. 534. The defendant cannot set up here, for the first time, violations of any clause not relied on in the court below, and not set forth in its answer. — *Williams* v. *Insurance Co.*, 54 N. Y. 573.

BAKEWELL, J., delivered the opinion of the court.

This action is on a policy of insurance issued by defendant to plaintiff on the 19th of November, 1874, and continued by renewals to the 19th of November, 1877, whereby appellant insured plaintiff on his stock of manufactured candy, raw material, and implements contained in plaintiff's candy and pop-corn manufactory, in St. Louis, in the sum of $2,000. The claim is for damages to the property named in the policy, by a fire on the 17th of March, 1877. The amount claimed is $1,443.

The answer sets up, as an affirmative defence, that it was

provided in the policy that it should be void if plaintiff should keep or use on the premises either petroleum, naphtha, gasoline, benzine, or benzine varnish, or keep or use camphene, spirit-gas, or any burning-fluid or chemical oils, without written permission inserted in the policy; that this provision was a warranty; and that plaintiff, in violation of this agreement, and without the knowledge or consent of defendant, did keep and use on the premises the articles named above, whereby the policy became void; and that the fire and loss were wholly caused by the keeping and use of those combustible materials.

These allegations were denied by the reply, which also alleged that the defendant orally consented that plaintiff might have burning-oils upon the premises.

On the trial, at the close of plaintiff's case, defendant asked an instruction in the nature of a demurrer to the evidence, which was refused. At the conclusion of the testimony the jury was withdrawn by consent, and the cause submitted to the court, which found for plaintiff in the sum $1,470.11; and defendant appeals.

The clauses of the policy introduced in evidence, upon which defendant relies here, are those portions of the printed provisions which declare that the policy shall be void (1) if the premises are occupied so as to increase the risk, or if the risk be increased by any means within the control of the assured; (2) if the assured shall keep gunpowder, * * * petroleum, naphtha, gasoline, benzine, benzole, or benzine varnish, or keep or use camphene, spirit-gas, or any burning-fluid or chemical oils; or (3) if the premises shall be used for any trade, business, or vocation, or for storing, using, or vending therein any of the articles denominated hazardous, extra hazardous, or specially hazardous, in the second class of hazards printed on the back of the policy. Amongst these second-class hazards are printed, " oils, essential oils, burning-fluid, camphene on sale, spirit-gas."

The evidence shows that plaintiff began to use Danforth's burning-fluid in 1876, and used it continuously to the date of the fire; that he was supplied from a neighboring store, and kept it in a ten-gallon can, but never bought more than five gallons at a time. He used it only for lighting purposes.

The fire was caused by the carelessness of a boy in the plaintiff's employ, who went to the closet where the burning-fluid was kept, for the purpose of filling the lamp in the dark, and lit a match to see whether the lamp was full, when there was an instantaneous explosion.

There was testimony from those engaged in its manufacture and sale that Danforth's burning-fluid is simply a form of coal-oil, more highly refined and much safer as regards its explosive qualities; that it is the first light product of the still in refining crude petroleum, and is called Danforth's fluid, or gasoline, or naptha, according to its specific gravity, these different names indicating different qualities; that the only danger from Danforth's fluid is that the vapor arising from it, when mixed with the atmosphere, is explosive; it cannot be burned in the ordinary coal-oil lamp; the fluid is put into a lamp, and the vapor rising from it is ignited; that this vapor will rise at a temperature of thirty degrees; but that there is no material difference, as to inflammability and explosiveness, between Danforth's fluid and coal-oil.

There was testimony for the defence that the vapor rising from Danforth's fluid can be ignited by a match, when the light is brought close to the surface of the oil, at the temperature of twenty-five degrees Fahrenheit, and that coal-oil of one hundred and ten degrees fire test gives forth no vapor at seventy-four degrees which can be ignited by bringing a match to the surface of the oil.

There was testimony that there were no gas-fixtures on the premises, and that the agents of the defendant had been in the store in 1873 and 1876, and had been told by plain-

tiff that he burned coal-oil there, and that they had made no objection. The testimony as to any actual notice of the use of coal-oil, and as to their visits to the store, was contradicted by the agents of the company.

For the plaintiff, the court declared the law to be : —

1. That though it should be found from the evidence that plaintiff had on the premises a reasonable amount of coal-oil and Danforth's fluid for his necessary lighting and illuminating purposes only, this was no violation of the policy, unless it further be found from the evidence that coal-oil, or Danforth's fluid, are in their nature like camphene or spirit-gas.

2. The policy prohibited plaintiff from keeping petroleum, naphtha, or gasoline; that clause, however, did not prohibit plaintiff from having on the premises a reasonable amount of said fluids for his necessary lighting and illuminating purposes.

3. The plaintiff was prohibited by the policy from keeping or using camphene or chemical oils on the premises; but the phrase, " any burning-fluid or chemical oils," as used in the policy, covers only such burning-fluids or chemical oils as are in their nature like camphene or spirit-gas.

For the defendant, ten instructions were asked and refused. It is not necessary to set them out; because it appears from the record that instructions were given for the defendant, which are omitted in the transcript. It is therefore impossible for us to say that any error was committed by the trial court in refusing instructions. Instructions refused may have been given, in substance, amongst those omitted from the record before us.

It appears from what has been said that the court, sitting as a jury, found as a fact that Danforth's fluid is not in its nature like camphene or spirit-gas. The burden of proof as to this matter was on the defendant, and there seems to be no reason to disturb the finding in this respect. The clause of the policy as to using burning-fluid

must, we think, be interpreted to mean burning-fluid such as camphene or spirit-gas. The intention was not, of course, to prohibit the use of any sort of light. The written part of the policy shows that the premises were used by plaintiff as a manufactory of candy, and as a residence. If there is any doubt about the construction, it should be solved against the defendant. But there seems to be no doubt. A clause prohibiting camphene, spirit-gas, or any other inflammable liquid, has been held not to exclude kerosene. *Woods* v. *Insurance Co.*, 46 N. Y. 421; *Morse* v. *Insurance Co.*, 30 Wis. 534.

There is no finding or proof, in the present case, that Danforth's fluid is inflammable, like gasoline or spirit-gas. Indeed, it would seem that it gives a safe light by the gradual combustion of the vapor that escapes from it in a lamp in regulated quantity; is not dangerous in the lamp, and only becomes so when a light is carelessly brought to the receptacle in which it is kept for the purpose of supplying the lamp. If the policy did not prohibit the insured from using Danforth's fluid as a light, the first and third provisions cited above cannot be construed as a prohibition against keeping it in moderate quantities to fill the necessary lamps from day to day. This was not storing or keeping the oil, in a sense intended to be prohibited; nor was it so using the premises as to increase the risk. *Buchanan* v. *Insurance Co.*, 61 N. Y. 26. In our opinion, the defendant has no ground to complain of the instructions given by the court. The plaintiff made out a *primá facie* case. The instruction for a nonsuit was therefore properly refused.

It is argued by counsel for appellant that cases in which, under similar policies, the use of coal-oil for a light has not been held to avoid them are not in point, where the cases are not instances of the use of such fluid in a building in a city lighted by coal-gas. This argument implies that it will be generally presumed, in case of insurance of a building used for a pop-corn and candy factory in St. Louis, that it is lit

with coal-gas, and seems to leave out of view the fact that the written part of the policy in this case contains the statement that the building is to be used as a residence as well as a factory. But there seems to be no great weight in the argument. It is notorious that coal-gas, in St. Louis, is not used in many establishments, and that stores and buildings used for commercial and manufacturing purposes in the city, even some of the better sort, are to some extent lit with coal-oil in some of its forms. Coal-oil is seen in show-windows in some of our best streets. Besides, the testimony in the present case tends to show that defendant had notice that the premises insured were not lighted with gas, and had no fixtures for such a purpose.

Our attention is called to the twelfth clause of the policy, prohibiting " the generating and evaporating within the building, or contiguous thereto, of any substance for burning-gas." We do not think this clause applies to the use of the fluid which caused the accident.

It may be further remarked that the clauses of the policy as to using the premises so as to increase the risk, and as to using or keeping articles in the second class of hazards printed on the back of the policy, were not pleaded by defendant; nor was the case tried as if they had been pleaded. Testimony was introduced as to Danforth's fluid; but this seems to have been done under the issue made by the pleadings that the plaintiff, by keeping naphtha, or by using a burning-fluid prohibited under the clause in the policy which prohibits camphene, had made the policy void. The case being tried solely on the theory that there was a violation of one special clause in the policy, it is too late now to contend that the policy was rendered void by the violation of another clause, or of other clauses, not relied upon at the trial.

We perceive no error in this record to warrant a reversal of the judgment. It is therefore affirmed. All the judges concur.