Mantz v. Maguire.

---

HENRY P. MANTZ AND ELIJAH S. WILLIAMS, Respondents, v. JOHN MAGUIRE, JOHN H. MAGUIRE AND WILLIAM A. MAGUIRE, Appellants.

St. Louis Court of Appeals, December 27, 1892.

1. **Law and Fact:** CONSTRUCTION OF WRITING. The interpretation of writing is always for the court, except, *first*, where the writing is

ambiguous and the ambiguity must be solved by extrinsic uncon-
ceded facts, and, *secondly*, where the writing is merely adduced as con-
taining evidence of certain facts from which different inferences may
be drawn, and where it is for the jury and not for the court to draw
the inferences; and *held* that the writings in question in this cause
were within neither of these exceptions.

2. **Value of Realty:** COMPETENCY OF WITNESS.  A real-estate agent,
who testifies that he has made a particular study of the values of
property in a certain locality, is a competent witness in regard to the
value of a lot in that locality, though he is unable to give instances of
actual sales at definite figures.

3. **Practice, Appellate:** CHANGE OF THEORY OF TRIAL.  A party can-
not try his case on one theory in the trial court, and upon another on
appeal.

4. ————: ————.  In this cause the defendants were sued for dam-
ages for the want of authority on their part to make a written contract
for the sale of land, which they had entered into as the agents of a
third person.  They pleaded only the general issue, raised no objec-
tion to evidence of the contract, made no specific objection to its
validity, and themselves offered evidence with the view of showing
authority on their part to make it.  Held, *per curiam*, that they were
not at liberty to contend on appeal that the contract was insufficient
under the statute of frauds.

5. ————: ————.  But *held* by BIGGS, J., *dissenting*, that the question
of the validity of the contract under that statute was sufficiently raised
by the asking of an instruction limiting the recovery of the plaintiffs
to the amount of earnest money paid by them, since that was the
extent of the right of recovery, if the contract was invalid.

6. **Statute of Frauds:** SUFFICIENCY OF MEMORANDUM: VALIDITY
AGAINST UNNAMED PRINCIPAL.  When the memorandum of a contract
for the sale of realty is entered into by one of the parties thereto as
agent for a third person who is not named therein, and this appears
upon the face of the memorandum, parol evidence is admissible, not-
withstanding the statute of frauds, to show who the unnamed principal
is for the purpose of binding him.

*Per Biggs, J., dissenting:*

7. **Principal and Agent:** IMPLIED WARRANTY OF AUTHORITY OF
AGENT: DAMAGES.  One who enters into a contract as the agent of another
person impliedly warrants his authority to act; but where he acts
without authority the other contracting party is not entitled to dam-
ages for the loss of the bargain, if the contract would have been
insufficient to bind the principal, even if authorized, as where it fails
to satisfy the requirements of the statute of frauds.  ·

8. **Statute of Frauds:** MEMORANDUM OF CONTRACT FOR THE SALE OF REALTY. A memorandum of a contract for the sale of realty is insufficient under the statute of frauds, if it fails to name or describe the vendor; such deficiency cannot be supplied by oral evidence showing who the vendor is.

*Appeal from the St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

AFFIRMED.

*Kehr & Tittmann* and *Joseph H. Zumbalen*, for appellants.

(1) The contract of sale would not have bound the principal if the agents had authority to make it, because it fails to disclose the vendor. *Schenck v. Co.*, 47 N. J. Eq. 44: *Clampet v. Bells*, 39 Minn. 272; *O'Sullivan v. Overton*, 56 Conn. 102; *Nichols v. Johnson*, 10 Conn. 198; *Mentz v. Newwitter*, 122 N. Y. 491; *Mayer v. Adrian*, 77 N. C. 83; *Ross v. Allen*, 45 Kan. 231; *Repetti v. Maisak*, 6 Mack. 368; *Grafton v. Cummings*, 99 U. S. 100; *Champion v. Plummer*, 1 Bos. & P. (N. R.) 252; *Boeckler v. McGowan*, 12 Mo. App. 507; Bishop on Contracts [Ed. 1887.] sec. 1070; *Huntington v. Knox*, 7 Cush. 374; *Murray v. Armstrong*, 11 Mo. 209; *Potter v. Bassett*, 35 Mo. App. 418. Hence, there can be no recovery against the agents, even if they were not authorized to make the sale. *Ding v. Parker*, 52 N. Y. 494; *Baltzen v. Nicolay*, 53 N. Y. 467; Mechem on Agency, sec. 548; Wharton on Agency, sec. 534. (2) The letters from Taylor to the appellants conferred upon them full authority to sell the property. *Smith v. Allen*, 86 Mo. 178; *Lyon v. Pollock*, 99 U. S. 668. The sale actually made was within the authority conferred. (3) The contract was binding upon Taylor although made by the firm of Maguire & Co., if one member of the firm had authority to make

it. The power of attorney to John Maguire was not revoked by the letters from Taylor to Maguire & Co. The appellants were not estopped from relying upon the power of attorney. There can be no estoppel *in pais,* where one has acted under a mistake as to his rights, or where the representation has not been acted upon, or where it does not appear that injury would result by permitting the truth to be shown. *Taylor v. Zepp,* 14 Mo. 489; Bigelow on Estoppel, 493; *Spurlock v. Sproule,* 72 Mo. 509; *Monks v. Belden,* 80 Mo. 642; Bigelow on Estoppel, 571, note 2. The question of estoppel *in pais* is one of fact for the jury. *Monks v. Belden,* 80 Mo. 642; *Co. v. Renfroe,* 58 Mo. 265. (4) The question of revocation of the power of attorney based upon the subsequent letters of Taylor was one of fact, and should have been submitted to the jury. *Huth v. Railroad,* 56 Mo. 206; *Primm v. Haren,* 27 Mo. 405; *Reynolds v. Richards,* 14 Pa. St. 205. (5) The witness Dunnerman was not competent to testify to the market value of the property. *Whipple v. Walpole,* 10 N. H. 131.

*Pollard & Werner,* for respondents.

(1) The first point made by counsel for appellants in their brief is that the contract of sale would not have bound the principal if the agents had authority to make it, because it fails to disclose the vendor. In Missouri the question is settled adversely to the proposition of counsel for appellants. *Hartzell v. Crumb,* 90 Mo. 629–639; *Kelly v. Thuey,* 102 Mo. 522. But a complete answer to this point is, that it does not arise on the record. The real objection is that the agreement was not a sufficient memorandum to bind Taylor or anybody under the statute of frauds, on the ground that it did not disclose the name of the party

for whom the agents acted as principal, that is, the name of the party who was selling the land, and that this could not be supplied by parol evidence. No such question was presented to the circuit court, either by plea or by objection to the evidence. This is a court for the correction of errors, and it can only review decisions of the lower court. *Scharff v. Klein*, 29 Mo. App. 549; *Penninger v. Reilley*, 44 Mo. App. 255; *Lammer v. McGeihan*, 43 Mo. App. 664. (2) The second point is, that the letters from Taylor did confer authority upon appellants to make the contract. The cases cited certainly are unlike the one before the court. We ask the court to read the letters at length as they appear in the record. The idea running through them all is that propositions to sell are to be submitted to Taylor. If they furnished authority to sell at all they did not authorize a sale on credit. A simple authority to sell means a sale for cash, and not on credit. Mechem on Agency, sec. 325. (3) The power of attorney given to John Maguire afforded no authority for the contract of sale. It did not authorize a sale on credit. Mechem on Agency, sec. 325. The evidence also shows that the defendants did not act under this power. Again this power of attorney was revoked or modified by the subsequent letters. Finally, the appellant is estopped from invoking this power of attorney. It would be a strange thing if these parties could be permitted to go into the Taylor case, and by producing these letters and swearing that they were the authority upon which they acted, thus defeating that case on the ground of a want of authority, and then, when they are sued on the ground that they had acted without authority, be allowed to come in and defeat this by setting up another and different authority, which it is not pretended that they were acting upon, or even remembered. We think they are estopped from doing this.

*Guffey v. O'Reiley*, 88 Mo. 418; *Loaning Ass'n v. Kehlor*, 7 Mo. App. 158; *Baley v. Williams*, 73 Mo. 310. (4) The fourth point is the question as to whether the letters were a revocation of the power of attorney. This was purely a legal question, as it was to be determined by an inspection of the papers. (5) The next point is that Dunnerman, a witness for plaintiff, was not competent to testify as to values. It is. not necessary that a witness who testifies that he knows the value of property be able to state that he knows of sales to render him a competent witness as to values. *Clay Works v. Ellison*, 30 Mo. App. 67, 86; *Railroad v. Calkins*, 90 Mo. 538, 543.

ROMBAUER, P. J.—The cause of action stated in the petition is to the effect that, on the fifth day of June, 1890, the defendants, claiming to act as the agents of one George R. Taylor, and claiming to have authority. from him to do so, entered into a written contract with the plaintiffs for the sale of certain lots belonging to Taylor in the city of St. Louis, in which the plaintiffs agreed to pay for the property the sum of $3,000 upon the terms set forth in the contract; that it was stipulated that the property should be conveyed to the plaintiffs by warranty deed, free from all liens, except the taxes of 1891. The contract, which is filed with the petition, reads:

"ST. LOUIS, June 5, 1890.

"Received from E. S. Williams and H. P. Mantz the sum of $50 in part payment of the purchase money for the following described property, to-wit: Lots 42, 43 and 41, fronting seventy-five feet south side of Walnut street, by a depth of one hundred and fourteen feet and three-twelfths feet, in city block number 1699, this day sold to E. S. Williams and H. P. Mantz for $3,000, to be paid as follows: $1,000 cash,

the $2,000 balance to be paid in one and two years, privilege to pay same any time before maturity, secured by deed of trust on property, with interest at the rate of six per cent. per annum on deferred payments. Should the title prove defective beyond remedy, then this contract shall be void, and the $50 hereby paid shall be returned to said E. S. Williams and H. P. Mantz and examination fee paid by seller. Title to be conveyed by warranty deed, excepting taxes for the year 1891, and all taxes thereafter, which purchaser assumes to pay. It is hereby agreed that, if said E. S. Williams and H. P. Mantz do not make cash payment of $950 within ten or fifteen days from the date hereof, then this contract to be absolutely void and no longer binding between the parties hereto, if so determined by the seller herein; and the $50 payment hereon is to be forfeited as liquidated damages for the purchasers' failure to execute this contract.

"Witness our hands hereto and in duplicate hereof this fifth day of June, 189–.

"JOHN MAGUIRE & Co.,
"Agents, by WM. A. MAGUIRE, [Seal]
"E. S. WILLIAMS, [Seal]
"H. P. MANTZ.     [Seal]"

It is then averred that the plaintiffs paid the $50 earnest money when the contract was delivered, and that they were ready and offered within the time specified to perform all other things required of them under the contract, but that Taylor refused to carry it out, claiming that the defendants had no authority to bind him in a contract for a sale of the lots. The plaintiffs further allege that thereafter they instituted a suit against Taylor for specific performance of this contract, in which action they were defeated on the ground that the defendants had no legal authority to make the sale. The petition then concludes by aver-

ring a want of authority in the defendants to make the contract; that the lots at the time of the breach were worth $5,000, and that the plaintiffs were damaged on account of the refusal of Taylor to complete the sale in the sum of $2,500. The answer was a general denial. The cause was tried by a jury and resulted in a verdict and judgment for plaintiffs for $1,251.25. The defendants have appealed.

The plaintiffs gave evidence upon the trial tending to show that the defendants in negotiating the sale, in question, acted as agents of George R. Taylor, and that such fact was known to the plaintiffs, all of which evidence was admitted without any objection. The plaintiffs also gave in evidence a number of letters written to the defendants by George R. Taylor, their principal, from which it appeared that the sale evidenced by the memorandum was beyond their authority, as they were neither authorized to conclude a bargain without first submitting it to their principal, nor authorized to sell on credit. It was shown that, in the action for specific performance brought by the plaintiffs against Taylor, the defendants were requested to produce whatever authority they had from Taylor to make this sale, and had produced these letters as showing such authority, and that one of the defendants testified in that suit that such letters contained all the authority they had. These letters were written in the fall of 1889 and spring of 1890. The plaintiffs also gave evidence showing a difference, in excess of the verdict actually recovered, between the market value of the property mentioned in the memorandum and its price as stated in the memorandum.

The defendants offered evidence tending to show that the difference between the market price of the property and the price mentioned in the memorandum was trivial, if there was any. The defendants then

offered in evidence a power of attorney, not under seal, executed by George R. Taylor to John Maguire in August, 1887, and before the firm of John Maguire & Co. was formed, giving him general power to sell the land in controversy, but containing no authority to sell on credit. This power of attorney gave to John Maguire power of substitution, but it did not appear that he had ever exercised such a power, nor did it appear that the member of the firm, who actually negotiated the sale, had any knowledge of its existence. The plaintiffs objected to the introduction of the power in evidence on the grounds, among others, that it was a power to John Maguire individually, and could not be exercised either by the firm or any other member of it; that it conferred no authority even on John Maguire to make a sale on credit, and that the subsequent correspondence between Taylor and the firm was tantamount to a revocation of the power, conferred upon John Maguire by it, and that these were questions of law for the court, as all the writings were before the court. The court excluded the power of attorney, and the defendants excepted. The defendants also offered in evidence a letter written by them to George R. Taylor five days after the date of the memorandum of sale, covering the deed to the plaintiffs and notes executed by them for deferred payments, and stating, among other things: "If you want cash for the property we can *probably* cash the notes for you without any trouble." This letter the court also excluded, and the defendants excepted.

The defendants, at the close of the plaintiffs' evidence, asked an instruction in the nature of a demurrer to the evidence, and, at the close of the entire case, they asked for a further instruction that the plaintiffs could not recover in excess of the $50 earnest money paid, and interest thereon. They also

asked this instruction: "If the jury find from the evidence that the defendants had authority in writing from George R. Taylor to sell the lots described in the petition, then the verdict must be for the defendants." The court refused these instructions, and upon its own motion charged the jury as follows: .

"Gentlemen of the jury: There is no evidence before you in this case that the defendants, at the time they executed the contract for the sale of the lots on Walnut street, mentioned in the evidence, dated June 5, 1890, and read in evidence, had any legal authority from the owner thereof to sell the same in manner and form, or upon the terms stated in said contract.

"If you believe from the evidence that, in making said contract, the defendants as a firm, or either of them acting in the firm name of John Maguire & Co., acted for Geo. R. Taylor, and that the plaintiffs so understood it at the time of the transaction; and if you also believe from the evidence that Geo. R. Taylor was at the time the owner of the property described in said contract; and if you also believe from the evidence that, within ten or fifteen days after the fifth day of June, 1890, the plaintiffs were ready and able and willing to comply with the terms of said contract on their part, and that they demanded from said defendants a deed for the property executed by said George R. Taylor, and then offered to comply with the said contract on their part, but that defendants, or some one of them, informed the plaintiffs that they could not comply with said contract, because the said Taylor refused to execute or deliver such deed for said property, then the plaintiffs are entitled to recover.

"And, in such case, you should assess the plaintiffs' damages at the sum of $50, with interest thereon at the rate of six per cent. per annum from August 15, 1891 (the date when the suit was instituted), to this date.

"And if you find and believe from the evidence that the fair and reasonable market value of the property mentioned in the evidence and in said contract of June 5, 1890, was on the day when said plaintiffs demanded such deed therefor, if you find from the evidence that such demand was made before June 20, 1890, was greater than the price fixed by said contract, then you should add to the sum of $50, and interest above mentioned, such additional sum as you may find and believe from the evidence that the fair and reasonable market value of the property exceeded said contract price.

"By the term market value is meant such sum as property will bring in the market, when offered for sale by an owner who is willing, but is not obliged, to sell to purchasers who are willing, but are not obliged, to buy the property."

The errors assigned are that the court erred in its rulings on the evidence and instructions.

Before proceeding to the examination of those questions of law, which one member of the court claims arise upon the record, we will dispose of those propositions of law which we can decide with unanimity, as properly raised by the record. We are all of opinion that the court did not err in rejecting the power of attorney in evidence, nor in rejecting the defendant's letter written to Taylor five days after the date of the memorandum. The defendants contend that the interpretation to be put upon the power and letters of Taylor raised a question of fact for the consideration of the jury, and, in support of that claim, refer us to *Primm v. Haren*, 27 Mo. 205, and *Huth v. Railroad*, 56 Mo. 202. The interpretation of writings is always for the court, except in two cases: *First*, where the writing is ambiguous, and the ambiguity must be solved by extrinsic unconceded facts, and, *next*, where the

writing is merely adduced as containing evidence of certain facts, from which different inferences may be drawn, and where it is for the jury and not the court to draw the inferences. Those were the questions decided in the cases cited. No such question arises in the case at bar. Laying all other considerations out of view, it must be evident that neither the power of attorney nor the. letters authorized a sale by the defendants on credit. Mechem on Agency, secs. 325, 358; *State v. Bank*, 45 Mo. 528, 538, and cases cited. The defendants' letter to Taylor, written some time after the sale, that they could *probably* cash the notes without any trouble, was not an offer to pay cash for the notes, conceding that such offer would have been availing.

The plaintiffs called as a witness as to values one Dunnerman, a real-estate agent in the city, who testified that he made the value of property in that locality a particular study, but who could not give instances of actual sales at definite figures. This witness placed the value of the property at the date of the memorandum at $75 per foot. His evidence was objected to on the ground that he had not properly qualified. The objection was properly overruled. Testimony as to value in such cases is matter of opinion, and the witness, under the rule stated in *St. Louis Ry. Co. v. Calkins*, 90 Mo. 538, 543, and cases there cited, was competent to give an opinion; its weight was for the jury. As the result shows, the jury did not attach much weight to the testimony of this witness, since their award of damages is less than any of the plaintiffs' witnesses on that subject testified to.

Nor is there any force in the objection, that it was not shown that George R. Taylor had any title to this property. John Maguire, one of the defendants, testified that the lots belonged to Taylor; that he had

charge of the property for twenty years; that Taylor inherited the property from his father, who died in 1880, and there was not even any countervailing evidence on that question. The measure of damages, therefore, under the rule laid down by the supreme court in *Hartzell v. Crumb*, 90 Mo. 629, was correctly stated in the instructions of the court to the jury.

The foregoing considerations, in the opinion of the majority of this court, dispose of every question which is properly raised on the record before us. They necessarily lead to the affirmance of the judgment. As, however, one of the members of the court is of opinion that other questions do properly arise upon this record and are decisive in favor of the defendants, we will enter into consideration of those questions for the purpose of showing that they do not properly arise upon the record and for the purpose of showing further that, even if they were properly raised, the defendants could not derive any benefit therefrom. We pursue this course because the questions thus mooted are of the gravest importance, affecting the practice both in trial courts and on appeal.

It was argued by the counsel for the defendants for the first time in this court that the memorandum of sale, forming the foundation of plaintiffs' cause of action, was not a sufficient memorandum under the statute of frauds to show a contract on the part of Taylor, because such memorandum did not state the name of the owner of the property. It was further argued that this point was sufficiently raised in the court below by a plea of the general issue, and a demurrer to the evidence. In answer to this argument a majority of the members of the court hold that the question, whether the memorandum was sufficient, cannot be raised in this court for the first time; that the defense of the statute of frauds was not properly raised

in the trial court, and that, even if raised, it would have been unavailing.

It is a salutary rule of appellate procedure, sanctioned by a long line of uniform decisions in this state, that the appellant cannot try his case on one theory in the trial court and upon another theory on appeal. *Trigg v. Taylor*, 27 Mo. 245; *Capital Bank v. Armstrong*, 62 Mo. 59, 65; *Walker v. Owen*, 79 Mo. 563; *Wheeler v. Ins. Co.*, 6 Mo. App. 235; *Barker v. Berry*, 8 Mo. App. 446; *Nance v. Metcalf*, 19 Mo. App. 186.

But, even if the defendant could be heard to raise for the first time in this court an objection to evidence offered in the trial court, and even if they could be permitted to first prove a contract orally in the trial court themselves, and then come into the appellate court and say the contract is not proved because it has not been established by written evidence (which the majority of the court holds cannot be done), still the defendants must fail, because, in the opinion of the majority of this court, the rule stated in *Higgins v. Senior*, 8 Mees. & W. 834, is the law of this state. In that case Mr. Baron Parke, in delivering the opinion, said: "There is no doubt that where such an agreement is made it is competent to show that one or both of the parties were agents for other persons, and acted as such agents in making the contract, so as to give the benefit of the contract on the one hand to, and charge with liability on the other, the unnamed principals; and this, whether the agreement be or be not required to be in writing by the statute of frauds; and this evidence in no way contradicts the written agreement. It does not deny that it is binding on those whom, on the face of it, it purports to bind; but shows that it also binds another, by reason that the act of the agent, in signing the agreement, in pursuance of his authority, is in law the act of the principal."

Judge LEONARD, whose learning has reflected great credit on the bench of this state, in the case of *Higgins v. Dellinger*, 22 Mo. 397, 400, not only adopts this statement of the law as announcing a correct principle, but also adopts the statement of Judge PORTER in *Hopkins v. Lacouture*, 4 La. Ann. 64, that the liability of the principal depended on the act done, and not on the form in which it is executed. The only difference is that, where the agent contracts in his own name, he adds his personal responsibility to that of the person who has empowered him. In *Briggs v. Munchon*, 56 Mo. 467, 472, the rule in *Higgins v. Senior* is again set out in full and expressly approved, and so in the late case of *Kelly v. Thuey*, 102 Mo. 522, 528, where the learned judge delivering the opinion states that it has been approved in this state and in other jurisdictions. The rule was held inapplicable in the last case, because the covenants contained in the memorandum were those of the agent; because there was nothing to show that the grantor knew who the real principal was, and because to have substituted the name of the principal for that of the agent would have been to make an entirely different contract for the parties than they had made themselves.

In the case at bar the memorandum is not under seal, and the technical rule which prevents an agent from binding his principal under seal, when he has no authority under seal himself, has no application. The memorandum upon its face discloses that the defendants were contracting as agents. The evidence that they did contract as agents, which is not only not objected to, but offered in a great measure by themselves, in no way contradicts the memorandum. On what conceivable theory the proof thus offered failed to show that they intended to bind their principal, and

did bind him as far as they had power to do so, passes our comprehension.

Judgment affirmed. Judge THOMPSON concurs. Judge BIGGS dissents.

BIGGS, J. (dissenting).—The majority of the court are of the opinion that the plaintiffs were entitled to recover for the loss of their bargain, and that the circuit court was justified in so instructing the jury. To this I cannot agree. The action is one for the breach of an implied warranty of authority by the defendants as agents of Taylor to make the contract set forth in the petition. If the defendants assumed to act for Taylor without having authority to do so, they would be answerable in this action for whatever amount had been paid on account of the pretended contract. But whether they must also answer to plaintiffs for the damage sustained by reason of the loss of a bargain, must depend upon the sufficiency of the memorandum to bind Taylor but for want of such authority. All the authorities hold this. In the case of *Dung v. Parker*, 52 N. Y. 494, the defendant falsely represented that he had authority to act as agent for another, and made a parol contract for the leasing of a store to plaintiff for two years, in consequence of which the plaintiff incurred expense in procuring fixtures, etc. The owner of the storeroom refused to execute the lease, and the plaintiff instituted the action for damages. The court of appeals, in its opinion, said: "In this case it is to be assumed, from the finding of the jury, that the defendant made a contract to lease the premises without authority. But the contract was by parol; and, if the defendant had possessed authority to make it, it would have conferred no right upon the plaintiff. The plaintiff has not been injured by the misrepresentation, and has lost nothing, for he

would have gained nothing if the representation had been true. He cannot say that he was defrauded, and make that the substantive ground of his recovery, because he had no right to rely upon a contract which, when made, the law declared to be void. If he incurred expenses on the faith of the promise, or relying upon the express assurance of the defendant that the corporation would sanction the contract, it is his misfortune, but it furnishes no ground of action."

. The same principle is clearly enunciated in a decision by the same court in a subsequent case (*Baltzen v. Nicolay*, 53 N. Y. 467), where it was said: "When an agent makes a contract beyond his authority, by which the principal is not bound, by reason of the fact that it was unauthorized, the agent is liable in damages to the person dealing with him upon the. faith that he possessed the authority which he assumed. The ground and form of his liability in such a case has been the subject of discussion, and there are conflicting decisions upon the point; but the later and better considered opinion seems to be that his liability, when the contract is made in the name of his principal, rests upon an implied warranty of his authority to make it, and the remedy is by an action for its breach. *Collins v. Wright*, 8 E. & B. 647; *White v. Madison*, 26 N. Y. 117; *Dung v. Parker,* 52 N. Y. 494. The reason why the agent is liable in damages to the person with whom he contracts, when he exceeds his authority, is that the party dealing with him is deprived of any remedy upon the contract against the principal. The contract, though in form the contract of the principal, is not his in fact, and it is but just that the loss occasioned by there being no valid contract with him should be borne by the agent who contracted for him without authority. In order to make the agent liable in such a case, however, the unauthorized contract must be

one which the law would enforce against the principal if it had been authorized by him (*Dung v. Parker, supra*), otherwise the anomaly would exist of giving a right of action against the assumed agent for an unauthorized representation of his power to make a contract, when the breach of the contract itself, if he had been authorized to make it, would have furnished no ground of action. That the agent who makes a contract for an undisclosed principal is personally bound by it, although the party dealing with him may know the general fact that he is acting as agent, is well-settled; nor does the fact that the agent is an auctioneer, and that the contract arises upon a sale by him as such, withdraw it from the operation of the rule. * * * The plaintiffs, upon the case made, must recover, if at all, upon the basis of the existence of a contract, valid in form, for the purchase of stock. If they rely on the false warranty of authority by the defendant, then, if the contract was invalid within the statute of frauds, they can recover nothing, for, in a legal sense they have sustained no injury. If they say that the contract was the personal contract of the defendant, he has a right to interpose the statute as his defense."

So in this state the supreme court in the case of *Lydick v. Holland*, 83 Mo. 703, decided that, when a contract could not be specifically enforced because of the statute of frauds, damages could not be allowed for its breach.

Now it is quite clear that the memorandum read in evidence by the plaintiffs is of itself insufficient as a contract for the sale of the lots, because, under all the authorities, the vendor must be named or described in the writing. *Hartzell v. Crumb*, 90 Mo. 629; *Kelly v. Thuey*, 102 Mo. 522; *Einstein v. Holt*, 52 Mo. 340; *Boeckeler v. McGowan*, 12 Mo. App. 507; *Fenly v.*

*Stewart,* 5 Sandf. (N. Y.) 101; *Schenck v. Spring Lake Co.,* 47 N. J. Eq. 44; *Clason v. Bailey,* 14 John. 484; *The First Baptist Church v. Bigelow,* 16 Wend. 28; *Calkins v. Faulk,* 39 Barb. 620; *Wright v. Weeks,* 25 N. Y. 159; *Drake v. Seaman,* 97 N. Y. 230; *Grafton v. Cummings,* 99 U. S. 100; *Martin v. Flowers,* 8 Leigh, 158; *Townsend v. Hubbard,* 4 Hill, 351; *Squier v. Norris,* 1 Lans. (N. Y.) 282; *Stackpole v. Arnold,* 11 Mass. 27; *Clampet v. Bells,* 39 Minn. 272; *Champion v. Plummer,* 4 B. & P. 253; *Williams v. Lake,* 29 L. J. Q. B. 1; *Mayer v. Adrian,* 77 N. C. 83; *Nichols v. Johnson,* 10 Conn. 198; *O'Sullivan v. Overton,* 56 Conn. 102; *Mentz v. Newwitter,* 122 N. Y. 491.

It will be observed that the instrument which we have here not only fails to name Taylor, but it does not in the remotest way name or refer to anyone as the vendor. It is clear that the paper, as written, obligated no one to convey, and the question which arises on this record is, whether it was competent to help out the instrument in this respect by oral evidence to the effect that Taylor was the real vendor. The majority opinion holds that, under the decisions in this state, which follow the *dictum* of the English court of exchequer in the case of *Higgins v. Senior,* 8 M. & W. 833, such evidence was admissible. In that case the defendant Senior, who had entered into a written contract in his own name for the sale of goods, undertook to discharge himself by showing that in making the contract he acted for a principal known to the plaintiff though not named in the contract, and that he, therefore, incurred no personal liability. The court held, and correctly so, that such evidence was incompetent for the reason that it contradicted the written instrument. But PARK, J., who delivered the opinion, said *arguendo:* "There is no doubt that, where such an agreement is made, it is competent to show that one or

both of the contracting parties were agents for other persons, and acted as such agents in making the contract, so as to give the benefit of the contract on the one hand to, and charge with liability on the other, the unnamed principals; and this, whether the agreement be or be not required to be in writing by the statute of frauds; and this evidence in no way contradicts the written agreement. It does not deny that it is binding on those whom, on the face of it, it purports to bind; but shows that it also binds another, by reason that the act of the agent in signing the agreement, in pursuance of his authority, is in law the act of the principal." Some of the American courts have given the English rule a qualified recognition by confining its application to simple contracts, other than negotiable instruments. *Nash v. Towne*, 72 U. S. 689; *Bank v. Hooper*, 5 Gray, 567; *Salmon Fall Mfg. Co. v. Goddard*, 14 How. 454. But the greater number of the cases repudiate the rule altogether, holding that the admission of oral evidence in such cases is incompetent, as tending to vary the writing. *Schenck v. Spring Lake Co.*, *supra; Stackpole v. Arnold, supra; Clampet v. Bells*, *supra; Mentz v. Newwitter, supra; Clason v. Bailey*, *supra; Grafton v. Cummings, supra; Fenly v. Stewart*, *supra; Pentz v. Stanton*, 10 Wend. 271.

The supreme court of this state, however, seems to have adopted the English rule, which, stated in the broadest terms, is to the effect that, if A contracts to sell land, it is competent to show by oral evidence that *his* individual undertaking was in law the undertaking of B, for whom he acted as an authorized agent. It is thought that such evidence in no way adds to or varies the writing, but only tends to show that some one else, other than the parties to the contract, is bound by it. This reasoning was never satisfactory to me. But how the rule can be extended to a case like we have here, where

no vendor is named, and there is nothing in the writing itself *obligating anyone* to make a conveyance, passes my comprehension. All the books say that it is essential in such a contract to name or describe the vendor and vendee; to describe the land so that it may be identified, and also to state the terms of the sale. These are the requisites. Now if it be competent to piece out such a contract by showing orally who the vendor is, where none is named, then in like manner the name of the vendee may be supplied, also the terms of the sale, and the description of the land, thus entirely uprooting the statute requiring such contracts to be in writing.

But it is argued by my associates that the sufficiency of the contract is assailed for the first time in this court. I take a different view. The sufficiency or insufficiency of the contract only became material in determining the measure of damages. If the memorandum was sufficient to bind Taylor, and the defendants were not authorized to bind him in such a contract, then the defendants were bound to answer in damages for the difference, if any, between the market value of the property at the time of the sale and the agreed price. But, on the other hand, if the contract was insufficient for the purpose stated, then the amount of the recovery ought to have been confined to the amount of money paid on account of the contract, whether the defendants had authority to make the sale or not. The defendants asked the court to declare as a matter of law that the plaintiffs' recovery could not under the evidence exceed the sum of $50, which was the amount paid by the plaintiffs on account of the alleged purchase, which instruction the court refused, and the defendants excepted. In this way the sufficiency of the contract was challenged, and, in my judgment, it was the only proper way to raise the question.

Neither do I think, as has been stated in the majority opinion, that the course pursued by the defendants at the trial is inconsistent with the theory that the contract was insufficient. The defendants attempted to show on the trial that they had written authority from Taylor to make the sale, and their counsel argue in this court that the letters from Taylor to them and the old power of attorney to one of the defendants constituted such authority. By this evidence, and by the instruction asked, the defendants attempted to avoid liability for the loss of bargain on two grounds: *First.* That the defendants had authority from Taylor to make the sale. *Second.* If the court found that they possessed no such authority, then such special damages could not be recovered, because the paper executed by the defendants and accepted by the plaintiffs was not a valid contract for the sale of the lots. I can see no inconsistency in this.

For the foregoing reasons I have been unable to agree with my associates as to the proper disposition of this case. I think that the plaintiffs are entitled to a judgment for $50 and interest, and no more.