ZILMAUR REALTY CORPORATION, Respondent, *v.* TOWNSEND PINK-
NEY, Individually and as Trustee, etc., of CORNELIUS S. PINKNEY,
Deceased, Sued Herein Individually and as Trustee of JOHN M.
PINKNEY, Deceased, Appellant.

First Department, March 21, 1924.

Vendor and purchaser — action against vendor to compel specific per-
formance of alleged contract to sell — alleged contract consisted of
letter directed to brokers containing terms of sale — letter was revoked
on same day it was signed — purchaser's name did not appear in
letter — memorandum not sufficient under Statute of Frauds — alleged
contract invalid for lack of mutuality.

A letter written by the owner of real property to real estate brokers authorizing
them to sell certain property and specifying the terms of sale and stating that
a certain form of contract was to be used, which does not contain the name
of any purchaser or anything from which the name of the purchaser can be
ascertained, is not a sufficient memorandum under the Statute of Frauds to
constitute a contract of sale which may be specifically enforced against the
alleged vendor.

If the letter could be considered an open offer, the authority therein given to the
brokers was revoked on the same day the letter was signed and before any
actual contract could have been made with a purchaser by the brokers.

Furthermore, the fact that the letter specifically refers to the execution of a
contract of sale by a purchaser, indicates that the owner had no intention to
give the brokers authority to close a sale with any'one without the approval
of the owner.

Moreover, the alleged contract is void and unenforcible for lack of mutuality,
since the name of the purchaser is undisclosed and does not appear in the
alleged contract.

APPEAL by the defendant, Townsend Pinkney, individually and
as trustee, etc., from an order of the Supreme Court, made at the
New York Special Term and entered in the office of the clerk of the
county of New York on the 12th day of January, 1924, denying
his motion for judgment dismissing the complaint upon the merits,
on the ground that the alleged contract on which the cause of
action is predicated is void and unenforcible under the provisions
of the Statute of Frauds.   (See Rules Civ. Prac. rule 107.)

*Hunt, Hill & Betts* [*Robert McLeod Jackson* of counsel], for the
appellant.

*Henry Clay Greenberg* of counsel [*Isidore Witkind* with him on
the brief], for the respondent.

MERRELL, J.:

The action is brought to compel specific performance of an
alleged contract for the sale of real property situate on Columbus

avenue in the city of New York. It is the contention of the appellant that the alleged contract sued upon is within the Statute of Frauds (Real Prop. Law, § 259) and is in no respect binding upon him nor enforcible by the plaintiff. The contract sought to be enforced was made on September 12, 1923, and is as follows:

"NEW YORK CITY, N. Y.,
"*Sept.* 12, 1923.

"Messrs. BROWN, WHEELOCK: HARRIS, VOUGHT & Co.,
"20 East 48th Street, N. Y.:

"GENTLEMEN.— I hereby authorize you to sell my property, #700–718 Columbus Avenue, size approximately 200 x 100 for $326,000 payable

"$10,000 on signing of the contract.

"$41,000 on passing title.

"$160,000 by accepting premises subject to the present first mortgage in that amount at 5%, and the balance of $115,000 by my taking a purchase money bond and mortgage in that amount with interest at 6% per annum, payable semi-annually, the mortgage to run until May 1st, 1927.

"Title to pass December 12, 1923, at the office of my attorneys, Messrs. Hunt, Hill & Betts, 120 Broadway, N. Y., and the Title Guarantee & Trust Company form of contract to be used.

"Yours very truly,
"TOWNSEND PINKNEY,
"*Trustee and Individual.*"

Annexed to the contract is a modification thereof signed by Pinkney, as trustee and individually. This modification consists of Pinkney's consent that the purchase-money mortgage may be divided into ten separate mortgages, and also consenting that the said purchase-money mortgage be subordinated at the option of the purchaser to separate first mortgages on each building at six per cent interest or less. It is to be noted that the alleged contract is in the form of a letter addressed to Messrs. Brown, Wheelock: Harris, Vought & Co. There was no written contract whatever in which the name of the plaintiff appears. It is claimed, however, by the respondent that one Wilson represented the plaintiff and in some way accepted the alleged offer on the plaintiff's part. The respondent's affidavits show that negotiations had been going on between Brown, Wheelock: Harris, Vought & Co. and the defendant for some time. The first mentioned parties were brokers and it is claimed that they had a customer for the premises in question. It does not appear either in the complaint

or in the affidavits that the name of the customer was disclosed to the defendant.  The letter of September twelfth fixed the date when the contract of sale would be closed and that a contract in the form used by the Title Guarantee and Trust Company would be used.  It is evident, therefore, that it was the agreement between the defendant and his brokers that a formal contract of sale was in any event to be made when the property was sold. No statement appears in the complaint or in any of the affidavits to the effect that the brokers acting as agents for the defendant made any written contract with the plaintiff for the sale and purchase of the premises.  The theory of the respondent and the trial court was that the letter constituted an offer to the client of Brown, Wheelock: Harris, Vought & Co. which is alleged to have been accepted by such client who is stated to be the plaintiff, the name not having been disclosed to the defendant.  While it is possible that the brokers may be in position to claim commissions from the defendant, it is very plain that the instrument sued upon is not a contract of sale which is enforcible by the plaintiff.  While it is true that a written offer to sell real property may be accepted orally and thus become effective, such is not the situation in the case at bar and such a condition of affairs cannot be implied or assumed from the allegations of the complaint nor from any facts stated in the affidavits.  The affidavit of the defendant states that on the 12th of September, 1923, at about twelve-thirty P. M. he met Winfred Watson and one Douglas Vought, an employee and an officer of the aforesaid brokerage firm, at the office of such corporation and that he there signed the letter of September twelfth and the consent annexed thereto.  Vought and Watson then took the defendant to luncheon and after luncheon the defendant returned with them to their office and the defendant stated to Watson and Vought that he would not close any contract without seeing his counsel, Robert McLeod Jackson, of the firm of Hunt, Hill & Betts.  The defendant then telephoned Jackson and told him what he had done.  Jackson instructed the defendant to get the paper back and the defendant then and there demanded return of the letter from Watson and Vought, which they refused.  It is obvious that Watson and Vought had not then closed any contract with any alleged purchaser or customer.  So that it seems to me that even if the letter of September twelfth was an open offer, the authority therein given to the brokers was revoked before any actual contract could possibly have been made with a purchaser.  Immediately after the defendant had talked with Jackson, Jackson talked with both Watson and Vought and was told by them that they would not return the letter.  The same afternoon

at about three o'clock the defendant signed and gave to his attorney Jackson a formal letter revoking the letter previously written on the same day. This letter was personally handed to the brokers by Jackson. On the morning of September thirteenth Watson came to the defendant's house and requested him to go to his office to meet a man whom Watson described as the proposed purchaser. The defendant told Watson that he would make no agreement without the approval of his attorney. Watson agreed to this, but said that he would like to have the defendant go to his office to talk matters over with the proposed purchaser in person. Watson called a taxicab and the parties went to the brokers' office. There the defendant was introduced to a Mr. Wilson, Wilson being described as the purchaser. Wilson had a check in his hands for $10,000 which he offered to the defendant and which was refused. Wilson certainly is not the plaintiff nor was the plaintiff's name mentioned at this or any other meeting between the parties. While it seems clear to me that the letter of September twelfth is nothing more than an instrument conferring authority to sell on the defendant's then brokers, still if it can be distorted into an open offer to sell to some alleged purchaser even then it is not sufficiently complete to meet the requirements of the Statute of Frauds in that it does not mention the buyer, nor is there any way in which the name of the buyer can be ascertained from the instrument. It, therefore, follows that there is nothing in the instrument from which it can be said that the minds of any two known parties met. Such being the case, there is no vendee who could enforce the instrument. This rule has been established by a long line of decisions. (*Mentz* v. *Newwitter,* 122 N. Y. 491; *Ward* v. *Hasbrouck,* 169 id. 407; *Bailey* v. *Ogden,* 3 Johns. 399, opinion by Chancellor KENT.) In *Mentz* v. *Newwitter* (*supra*) the court in considering the Statute of Frauds (2 R. S. 135, §§ 8, 9) said (at p. 494): "And the precise question we are to determine is, whether a memorandum, which does not name or describe the vendor, fulfills the requirements of the law.

"A note or memorandum in writing of the contract is necessary to give validity not only to agreements for the sale of land, but also to agreements not·to be performed within a year, to answer for other's debts, and for the sales of goods and chattels and things in action, for the price of fifty dollars or more.*

"In considering, therefore, the question, what is a sufficient 'note or memorandum,' within the meaning of the statute, cases

---

* See 2 R. S. 135, §§ 8, 9; 2 R. S. 135, § 2, as amd. by Laws of 1863, chap. 464; 2 R. S. 136, § 3; now Real Prop. Law, § 259; Pers. Prop. Law, § 31; Id. § 85, as added by Laws of 1911, chap. 571.— [REP.

decided under any of these several provisions of the statute may be examined as authorities.

" Many English cases, in regard to sales of goods and chattels, are collected in Benjamin on Sales (Bennett's ed.), sections 234 to 238, and that learned author states the general rule deduced from them to be as follows: ' It is indispensable that the written memorandum should show not only who is the person to be charged, but also who is the party in whose favor he is charged. The name of the party to be charged is required by the statute to be signed, so that there can be no question of the necessity of his name in the writing. But the authorities have equally established that the name, or a sufficient description, of the other party is indispensable, because, without it, no contract is shown, inasmuch as a stipulation or promise by it does not bind him, save to the person to whom the promise is made, and until that person's name is shown it is impossible to say the writing contains a memorandum of the bargain.' "

To the same effect is the earlier case of *Calkins* v. *Falk* (39 Barb. 620; affd., 41 N. Y. 619; 1 Abb. Ct. App. Dec. 291). There Calkins sued Falk to recover for the breach of an executory contract for the sale of hops. An instrument was executed in which it was stated by Falk that he had sold his entire crop of hops, for the year, of about four acres, to be delivered at Palatine Bridge upon ten days' notice, said hops to be good, merchantable hops. The instrument stated the price and that the delivery was to be on or before November first next and was signed " Abram Falk." A similar instrument was executed and signed by James E. Sutphen, who was Calkins' assignor. Suit having been brought by Calkins the court held that as the contract failed to state the name of the party to whom the hops were sold, it was not a sufficient compliance with the Statute of Frauds. (See 2 R. S. 136, § 3.) The statute there involved is now in the Sales of Goods Act. (See Pers. Prop. Law, § 85, as added by Laws of 1911, chap. 571.) The court said: " It no more purported an agreement with the plaintiff's assignor than any other party." The Supreme Court of the United States in *Grafton* v. *Cummings* (99 U. S. 100) held that under the New Hampshire Statute of Frauds the memorandum must contain not only a designation of the party to be charged, but the other contracting party must be so designated that he could be identified without parol proof. The English case of *Champion* v. *Plummer* (1 B. & P. [N. R.] 252) is also directly in point. That case was decided in 1805 and has been frequently quoted in decisions in this State, notably in *Mentz* v. *Newwitter* (*supra*). Chief Justice MANSFIELD in the above case said: " How can that be said to

be a contract, or memorandum of a contract, which does not state who are the contracting parties? By this note, it does not at all appear to whom the goods were sold. It would prove a sale to any other person as well as to the plaintiffs."

The case of *Walsh* v. *Van Amringe* (103 Misc. Rep. 350; affd., 185 App. Div. 944) is another case directly in point where the name of the vendee did not appear in the alleged contract. There is nothing in the complaint nor in any of the affidavits which identifies the plaintiff with the transaction which took place on September twelfth. Watson, in his affidavit, says: " That on the delivery of said memorandum deponent communicated with Nathan Wilson, the duly authorized representative of the plaintiff corporation, and informed him of the defendant's written offer to sell the premises as aforesaid, and Mr. Wilson thereupon on behalf of the plaintiff corporation, accepted said offer and deponent communicated such acceptance to the defendant." Watson does not state that he told the defendant the name of the alleged purchaser, and the defendant in his affidavit states that Wilson on the next day was called by Watson the " purchaser." Whatever happened on the next day, which was September thirteenth, is not important for the reason that whatever powers or authority had been theretofore conferred upon the brokers had been revoked and they had no authority on the thirteenth of September to close any deal. We think the trial court when he says in his opinion that the vendor had investigated the financial responsibility of the purchaser made a statement quite contrary to the facts as disclosed in the papers. As bearing upon the nature of the instrument which was signed by the defendant on September twelfth it is important to note that such instrument specifically referred to the execution of a contract of sale by a purchaser. The significance of such statement rests in the fact that the instrument itself showed that the brokers had no authority to close a deal. They, therefore, had no authority to make a contract with an alleged purchaser which would be complete in itself and binding upon the defendant and there is no fact showing that they did make any such contract. The brokers could not confer greater rights upon the plaintiff than they enjoyed themselves and it is quite evident that the defendant did not consider, when he signed the letter of September twelfth, that he was binding himself to a contract of sale with any one. It has been held that where a similar provision appears in an instrument it is strong evidence that the minds of the parties have not met. (*Bryant* v. *Ondrak*, 87 Hun, 477; *Brown* v. *N. Y. C. R. R. Co.*, 44 N. Y. 79; *Sherry* v. *Proal*, 131 App. Div. 774; *Arnold* v. *Rothschild's Sons Co.*, 37 id.

564; affd., 164 N. Y. 562.) It was of the utmost importance to the vendor to know the person with whom he was contracting and as to the purchaser's financial responsibility, as the unpaid purchase price was to be secured by the *bond* of the purchaser and mortgage upon the property sold.

It is important to note that in all the cases above cited where it was held that it was necessary for the name of the purchaser to appear in the contract, the contract was signed by the party to be charged, and that the name of the true purchaser was known to the other party. Moreover, it cannot be said that there can be such a thing as mutuality where the name of a vendee is undisclosed and does not appear in the contract, for it is obvious that such vendee could not be held on the alleged contract. (*Ide* v. *Brown,* 178 N. Y. 26; *Wadick* v. *Mace,* 191 id. 1; *Levin* v. *Dietz,* 194 id. 376.) In the above cases it was held that a contract for the sale of land must be mutually obligatory before it can be specifically enforced. No claim is made here that the instrument of September twelfth was in any respect a mere option, but it is alleged to be an enforcible contract of sale. Such being the case the rule in the above cases applies.

The order appealed from should be reversed, with ten dollars costs and disbursements, and the defendant's motion granted, with ten dollars costs.

DOWLING, SMITH, FINCH and MARTIN, JJ., concur.

Order reversed, with ten dollars costs and disbursements, and motion granted, with ten dollars costs.